WILLIAM A. HASTINGS v. EDMUND HAUG, POLICE: JUSTICE OF DETROIT.

*Gaming—Search-warrant—Complaint—Jurisdiction—Destruction of apparatus.*

1. It was not intended by the framers of our Constitution that, before a search-warrant should issue for gaming apparatus and implements, the complainant should be able to give an accurate description of such articles.

2. A complaint for a search-warrant under How. Stat. § 9616, in which the complainant asserts that gaming implements, and other chattels and apparatus which he was unable to specify, were used and kept to be used in unlawful gaming, specifying the time and place, and that the place was resorted to for the purpose of unlawful gaming, and that he has just and reason-

able cause to believe, and does believe, that said goods and chattels, or some portion of them, were then at the building named, and that the grounds for his suspicion were information derived from a specified person, is sufficient to confer jurisdiction.

3. Tables manufactured and used for gambling purposes come clearly within How. Stat. §§ 9616, 9619, providing for the seizure and destruction of gaming apparatus, or implements used or kept, and provided to be used, in unlawful gaming, etc.

*Certiorari* to review proceedings resulting in an order for the destruction of gaming apparatus, etc. Submitted on briefs February 4, 1891. Writ dismissed February 27, 1891. The facts are stated in the opinion.

*John Miner,* for plaintiff in *certiorari.*

*James V. D. Willcox* and *Samuel W. Burroughs,* for defendant in *certiorari.*[1]

GRANT, J. Upon a complaint properly verified before the defendant, who was one of the police justices of the city of Detroit, the following warrant was issued:

"SEARCH—WARRANT.

" STATE OF MICHIGAN, ⎫ ss.
 " County of Wayne, ⎭

" To the superintendent, or any captain, sergeant, roundsman, detective, or patrolman of Metropolitan Police Force of the city of Detroit, in said county, greeting:

" WHEREAS, Thomas J. Myler, of the city of Detroit, in said county, hath this day made complaint on oath before the undersigned, one of the police justices of the city of Detroit, in said county, that goods and chattels, to wit, gaming implements, and other chattels and apparatus which complainant is unable to specify, used and kept to be used in unlawful gaming in a certain apartment in the building known as No. 188 Griswold St., in the city of Detroit, which said building was on

---

[1] The brief for the defendant in *certiorari* was prepared by Mr. Willcox, the former prosecuting attorney.

said fifth day of July a place resorted to for the purpose of unlawful gaming, and that —— has just and reasonable cause to believe said goods and chattels, or some portion of the same, are in the building known as No. 188 Griswold St., in said city of Detroit, and said county, and that the grounds of said suspicions are as follows: Information derived from George Bissonet.

"In the name of the people of the State of Michigan, you are therefore hereby commanded to enter in and upon said described premises, and there make diligent search for said goods, and, if the same or any part thereof be found, that you bring the same before me, to be disposed of according to law.

"And you, the said superintendent, captain, sergeant, roundsman, detective, or patrolman, having possession and executing this writ, are further hereby commanded to notify the person in control and possession of the premises aforesaid to appear at the police court building on the 9th day of July, A. D. 1890, then and there to show cause why the property above specified in this writ, and found and seized in accordance with its direction, and by its authority, should not be disposed of then and there as provided by law.

"Witness the Hon. Edmund Haug, senior police justice of the police court of the city of Detroit.

"Given under my hand and seal at Detroit, in said county, on the 8th day of July, A. D. 1890.

[Seal.]    "EDMUND HAUG,
"One of the Police Justices of the City of Detroit."

This warrant was duly executed and returned by the officer, who certified that he had searched the premises described in the warrant, and had there found one faro table, one faro lay-out, 1,200 checks, one faro deal box, two check racks, one case keeper, one poker table, one stud poker table, one cribbage-board, four packs of cards, and four checkers or coppers, and that he found one John Considine in charge of the said premises, and had notified him to be and appear personally or by attorney before said police justice on said July 9, at 2 o'clock P. M., and show cause why said articles should not be disposed of in the manner provided by law. Several wit-

nesses were sworn upon the hearing, by whom it was conclusively shown that the place described in the complaint and warrant was a gambling den, and that the articles there found and seized were gambling implements, except the cribbage-board and the four checkers or coppers. The defendant directed the officer, in compliance with the statute, to destroy by fire all the property, except one faro table, one cribbage-board, and four checkers or coppers, which he was directed to return to No. 188 Griswold street. We do not understand for what reason defendant ordered a return of the faro table. We presume that it was an error in making up the record, for that was unquestionably a gambling implement, and should have been destroyed with the other property.

Plaintiff brings the case to this Court by *certiorari*, and in his petition alleges that he came into the possession of certain of this property as assignee of one James K. Porter, an insolvent, which he describes as follows:

"1. A table of general and usual characteristics.

"2. A table of a crescent or semi-circular form, with a crescent space cut out of one of its edges, to allow a person to sit closely up to the same.

"3. A table described generally as circular in form, with a small slot cut in the center thereof, which communicates with a drawer beneath said table."

The petition fails to state the purpose for which these tables were made or were used, nor does it deny that they were used for gambling purposes at the place and time stated. But plaintiff claims that the proceedings were without lawful jurisdiction, because—

1. The complaint specifies no article as a gaming implement.

2. The warrant specifies no article to be seized by the officer executing the same.

3. The warrant is, to all legal intents and purposes, a general warrant, and furnishes no justification for either search or seizure.

4. The testimony was insufficient in law to justify the judgment

The law under which this proceeding was had is found in How. Stat. § 9616, and is as follows:

" Any such magistrate may also, upon like complaint made on oath, issue a search-warrant, when satisfied that there is reasonable cause, in the following cases, to wit:

"1. To search for and seize any counterfeit or spurious coin, forged bank-notes, or other forged instruments, or any tools, machines, or other materials prepared or provided for making either of them.

"2. To search for and seize any books, pamphlets, ballads, printed papers, or other things containing obscene language, or obscene prints, pictures, figures, or descriptions, manifestly tending to corrupt the morals of youth, and intended to be sold, loaned, circulated, or distributed, or to be introduced into any family, school, or place of education.

"3. To search for and seize lottery tickets, or materials for a lottery, unlawfully made, provided, or procured for the purpose of drawing a lottery.

"4. To search for and seize any gaming apparatus or implements used or kept, and provided to be used, in unlawful gaming, in any gaming-house, or in any building, apartment, or place resorted to for the purpose of unlawful gaming."

It is insisted on behalf of the plaintiff that the property is not sufficiently described, within article 6, § 26, of the Constitution. This section reads as follows:

" The person, houses, papers, and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place, or to seize any person or things, shall issue without describing them, nor without probable cause, supported by oath or affirmation."

We cannot agree with this construction of the above constitutional provision. The result would be to defeat the very purpose of the above enactment, which has been upon our statute books since 1838. It is to be presumed

that gambling, counterfeiting, and similar crimes are committed secretly. One object, and a legitimate one, is to obtain evidence, while the other is to destroy the demoralizing business, and punish the offenders. Where one's property has been taken, he may well be held to an accurate description. But we do not think the framers of the Constitution intended that before a search-warrant should issue for tools and machines used in counterfeiting, or for counterfeit coin, or for obscene books, etc., or for gaming apparatus and implements, the person making complaint should be able to give an accurate description of such articles. In the very nature of things, the person complaining could not give such description without a personal knowledge gained by his presence at such places; and persons resorting there seldom make complaint, or give information to the officers, whose duty it is to suppress them. The Constitution and the statute both require that the complaint must be on oath, and that the magistrate must be satisfied that there is reasonable or probable cause. The complaint in the case at bar was upon oath. The complainant asserted that gaming implements, and other chattels and apparatus which he was unable to specify, were used and kept to be used in unlawful gaming, specifying the time and place, and that the place was resorted to for the purpose of unlawful gaming; that he had just and reasonable cause to believe, and did believe, that said goods and chattels, or some portion of them, were then at the building above specified; that the grounds for his suspicion were information derived from one George Bissonet. The magistrate in this case was satisfied from this complaint under oath that there was reasonable cause, and the result justified the correctness of his conclusion.

The owner of stolen property must usually make his

complaint upon information and belief, except as to a description of the property. All that the statute requires as to the particular house or place is that the complainant shall declare upon oath that he believes that the property is concealed there. How. Stat. § 9615. The officer or other person who makes a complaint under section 9616 may have just as good grounds for the belief that gaming implements or counterfeit coin, or tools, machines, and materials used for making such coin, are in a particular place, as the owner of stolen property may have of the place where it is concealed. How could one describe the counterfeit or spurious coin or forged bank-notes, or any of the other property mentioned in the section, under the construction contended for by the plaintiff? It is apparent that this construction would effectually destroy one of the most efficient means for the detection and punishment of criminals of a most dangerous character. We think that the complaint was sufficient to confer jurisdiction.

Plaintiff further insists that these articles, being inanimate property, were harmless in themselves, and at most were devoted to noxious uses, and that which constitutes the noxious use may be removed, and therefore there remains no necessity for their destruction. To support his position he cites *Welch v. Stowell*, 2 Doug. 332; *Brady v. Insurance Co.*, 11 Mich. 452; *Shepard v. People*, 40 Id. 492. None of these cases are applicable to the case at bar. *Welch v. Stowell* involved the right to destroy a house because it was used as a house of ill fame. *Brady v. Insurance Co.* involved the effect of an ordinance establishing fire limits, and forbidding the rebuilding or repairing wood buildings within such limits. *Shepard v. People* involved the right to destroy a dam as a nuisance. But the testimony in this case shows that these tables

were manufactured and used for gambling purposes, and therefore come clearly within the statute.

We find no error in the record, and the writ must be dismissed, with costs.

The other Justices concurred.