## WOLCOTT *v.* JUDGE OF SUPERIOR COURT.

1. INTOXICATING LIQUORS—QUALIFICATION OF SURETIES — CONSTITUTIONAL LAW.

The provision of 3 How. Stat. § 2283d1, which precludes a person from becoming surety on more than two liquor bonds, is constitutional.

2. SAME—INSUFFICIENT BOND—LIABILITY OF PRINCIPAL.

Under 3 How. Stat. § 2283d, making it a misdemeanor for any person to engage in the liquor business without having given the bond required by the act, a saloon keeper whose bond is insufficient because one of his bondsmen is disqualified is not relieved from liability by the fact that the officers charged with the duty of determining as to the sufficiency of the bond have accepted and approved the same. MONTGOMERY, J., and LONG, C. J., dissenting.

*Mandamus* by Alfred Wolcott, prosecuting attorney of Kent county, to compel Edwin A. Burlingame, judge of the superior court of Grand Rapids, to vacate an order quashing an information. Submitted January 5, 1897. Writ granted April 17, 1897.

*Alfred Wolcott* (*W. D. Fuller*, of counsel), *in pro. per.*

*L. E. Carroll*, for respondent.

MONTGOMERY, J. Relator filed an information in the superior court against one Fred Saunders, a resident of the city of Grand Rapids, charging that the respondent was engaged in the business of selling at retail spirituous liquors, etc., without first having made, executed, and delivered to the treasurer of the county the bond required by law; and that the failure to file such bond consisted in this: That the bond made and filed was not signed by two or more sureties who were not sureties upon two or more other similar bonds, but that the bond made, executed,

and delivered by said Fred Saunders was signed by two sureties only, and that one of said sureties was, at the time he so signed said bond, a surety upon more than two other bonds required by the provisions of the liquor law. Upon motion, this information was quashed, and relator seeks to have the order quashing the information set aside, and the cause reinstated. The question presented is whether a bond approved by the common council of a city or village is, in all cases, a protection, or whether the party giving the bond must see to it at his peril that the bondsmen have the qualifications fixed by statute.

The statute (section 2283*d*1, 3 How. Stat.) reads as follows:

"Every person engaged in the sale of any spirituous, malt, brewed, fermented, or vinous liquors, except druggists, shall, before commencing such business, and on or before the 1st day of May in each and every year thereafter, make, execute, and deliver to the county treasurer of the county in which he is carrying on such business, a bond, the sufficiency of which shall be determined by the township board of the township, or the board of trustees, the council, or the common council of the village or city, in which such business is proposed to be carried on, to the people of the State of Michigan, in the sum of not less than three thousand nor more than six thousand dollars, with two or more sufficient sureties, who shall be male residents and freeholders of the township, village, or city in which such business is proposed to be carried on, neither of whom shall hold any elective or appointive office in any county, city, village, or township of this State, except notaries public, nor be a surety upon more than two bonds required by the provisions of this act, and each of whom shall justify in real estate situated in the county in which such business is proposed to be carried on, in a sum equal to the amount of the bond, over and above all indebtedness and all exemptions from sale on execution."

By section 2283*d* it is provided that—

"If any person or persons shall engage or be engaged in any business requiring the payment of a tax under section one of this act, * * * without having made,

executed, and delivered the bond required by this act, * * * such person or persons shall be deemed guilty of a misdemeanor," etc.

It will be noted that the information does not allege that Saunders knew of the fact that the sureties whom he tendered, and who signed the bond approved by the common council, were sureties on other bonds, nor does it appear that the bond was, in any respect, informal, or that there was any failure to comply with the statute by causing to be annexed to the bond an affidavit in due form. The question, then, is whether, under the provision of the law last quoted, one who tenders in good faith a bond in proper form, purporting to be signed by sureties competent for the purpose, and who, in good faith, after filing such bond, with the approval of the common council, engages in the business of selling liquor, is liable to a criminal prosecution. We think this question should be answered in the negative. In the case of *Goff* v. *Fowler*, 3 Pick. 300, an objection was made that a license granted by the court of sessions was invalid because of irregularity in the proceedings anterior to the grant of the license. The court, by Chief Justice Parker, said:

"The objection to the license on the ground that the certificate of the selectmen was not conformable to the statute we think ought not to prevail. The act of the court of sessions, in granting the license, is, we think, conclusive, and ought not to be vacated on account of the informality of anterior proceedings. It is the duty of that court to inspect such certificates and adjudicate thereon, and they are the proper judges of their sufficiency. It would be laying a. snare for persons who obtain a license and pay the excise thereon to leave them subject to prosecution for keeping an inn without license, by allowing any informer to unravel the proceedings of the court in order to detect some irregularity therein."

It was held by this court in *Amperse* v. *Winslow*, 75 Mich. 234, that officers charged by statute with the approval or disapproval of liquor bonds act judicially.

See, also, *Parker* v. *Village of Portland*, 54 Mich. 308.
And, in *Potter* v. *Village of Homer*, 59 Mich. 13, it
was held that the approving board have the power to
make inquiry beyond the averments of the affidavit of
justification, and that in this they have the same discre-
tion, and no more, that is possessed by other persons
called on to approve sureties.

The only authority cited by counsel for relator to
sustain his contention is a statement from Black on In-
toxicating Liquors (section 197) to the effect that the
giving of the liquor bond is an essential condition pre-
cedent to the validity of the license, and that a license
granted without the bond being given is no protection
to the holder.   The case upon which this doctrine rests is
*State* v. *Fisher*, 33 Wis. 154, in which case no bond
whatever was given by the respondent, and it was held
that, under the terms of the Wisconsin statute, the council
had no jurisdiction to grant a license.   This, depending
upon a construction of the law, was, of necessity, a fact as
well known to respondent as to the board.   We are not
called upon to determine whether a dealer would be sub-
ject to prosecution in case the bond upon its face failed
to conform to the statute, or in case it were averred and
shown that on the face of the proceedings before the
approving board there was no jurisdiction conferred upon
the board to approve the bond by reason of a failure
to comply with the statute, as by the omission of the
requisite justification.   Such a state of facts would pre-
sent a very different question.   We confine our holding
strictly to the case in hand.

It is contended by the respondent, upon the authority
of *Kuhn* v. *Detroit Common Council*, 70 Mich. 534,
that the provision of the statute which prohibits the ac-
ceptance of the same surety on more than two bonds is
unconstitutional.   The authority of that case has been
misapprehended.   The holding in that case was that it
was not lawful to preclude a person from becoming a
surety on a bond because of the fact that he was engaged

in a particular business.   This certainly does not go to the length of holding that it is incompetent for the legislature to limit the number of bonds of a certain kind upon which any one person may become a surety, treating all persons alike in that regard.

For the reasons stated, we think the trial judge correctly ruled the case, and the application should be denied.

LONG, C. J., concurred with MONTGOMERY, J.

HOOKER, J.   I am unable to concur in the opinion of Mr. Justice MONTGOMERY in this case.   Section 2283*d* of 3 How. Stat. provides that: " If any person or persons shall engage or be engaged in any business requiring the payment of a tax under section one of this act,   *   *   *   without having made, executed, and delivered the bond required by this act,   *   *   *   such person or persons shall be deemed guilty of a misdemeanor," etc.   The next section prescribes the requisites of the bond required, and is incorporated at length in my Brother MONTGOMERY'S opinion.   I am impressed that it was the intention of the legislature to make the execution and delivery of the prescribed bond a condition precedent to sale, and to require the person desiring to engage in the business mentioned to assume the responsibility of knowing that the bond, when presented, complies in all essential particulars with the law.   He must know that his sureties are males, and that they are resident freeholders of the township, village, or city in which the business is to be carried on; that they hold none of the offices prohibited by the act; and that, at the time the bond is filed, neither is a surety upon more than two bonds required by the act.   The sufficiency of such bond, both as to amount (within limits fixed by the act) and as to the pecuniary responsibility of the sureties, is to be determined by the board.   This is the extent of the discretion that is lodged in the board; and while they may properly refuse to approve a bond if they are not satisfied that it is in all respects valid, as well as sufficient in amount and solvency of sureties, the person giving a defective

bond, as contradistinguished from one that is insufficient, cannot shelter himself behind an approval by the board, whether such approval be the result of incompetency, carelessness, mistake, fraud, or collusion. The history of legislation on the subject of intoxicating liquors, and the obstacles encountered to enforcement of the law pertaining to this subject, in the light of which this statute must be read, forbid the belief that the legislature intended that the approving board should be vested with broad powers, or that upon the public, through these boards, should rest the burden of seeing that bondsmen are eligible in other particulars than responsibility. The law expressly says that a man who shall engage in business before he offers the required bond shall be punished. Certainly this is plain language, and there is, in my opinion, no necessity for holding that it means less than it says, because it gives to the public the right of supervision to make sure that such bond shall be signed by responsible sureties, or because the penalty of such bonds is not required to be the same in all cases. In the nature of things, it is as easy for the person giving the bond to ascertain whether the proposed sureties are eligible, as for the board to do so. If the responsibility is on the board, they must ascertain the necessary facts at their own or the public expense. If such is the rule, imposition is greatly facilitated, and a premium put upon it; while, if it is understood that the approval of a defective bond is no protection, the law practically enforces itself. In this view of the case, the question of intent becomes unimportant. See *People* v. *Roby*, 52 Mich. 577 (50 Am. Rep. 270).

Upon the constitutional question, I concur in the views expressed by my Brother MONTGOMERY, and it follows that the information should not have been quashed. The writ is therefore granted.

GRANT and MOORE, JJ.. concurred with HOOKER, J.