PEOPLE v. SNOWBERGER.

1. ADULTERATION OF FOOD — STATUTORY OFFENSES — INTENT — POLICE POWER.

It is competent for the legislature, under the police power, to provide for the protection of the public health by making it an offense punishable by fine and imprisonment to sell adulterated food or drink, irrespective of the seller's knowledge of the adulteration.

2. SAME.

Act No. 193, Pub. Acts 1895, prohibits the manufacture or sale of adulterated articles of food or drink, and prescribes what shall be deemed adulteration within the meaning of the act. Section 8 forbids any person from *knowingly* offering for sale cheese which is falsely labeled; this being the only case in which knowledge is expressly made an element of an offense designated by such statute. *Held*, that proof of guilty knowledge or intent is not essential to the conviction of one who sells adulterated food.

Exceptions before judgment from Monroe; Kinne, J. Submitted April 29, 1897. Decided May 25, 1897.

Michael Snowberger was convicted of selling adulterated food, in violation of Act No. 193, Public Acts of 1895. Conviction affirmed.

*William Look* and *Ira G. Humphrey* (*Bowen, Douglas & Whiting*, of counsel), for appellant.

*Willis Baldwin*, Prosecuting Attorney, for the people.

LONG, C. J. Respondent was convicted under an information charging that—

"On the 19th day of April, A. D. 1897, at the city of Monroe, and in the county aforesaid, Michael Snowberger did offer for sale, and sell, to Carl Franke, an adulterated article of food, to wit, a quantity of mustard, to wit, a quarter of a pound, colored and adulterated with tumeric,

whereby the said mustard, as an article of food, was damaged, and its inferiority concealed, and whereby it was made to appear of better and of greater value than it really was, the same not being a mixture or compound recognized as ordinary articles or ingredients of articles of food, contrary to the form of the statute in such case made and provided," etc.

The information was filed under Act No. 193, Pub. Acts 1895, entitled "An act to prohibit and prevent adulteration, fraud, and deception in the manufacture and sale of articles of food and drink." The act provides:

Section 1: "No person shall, within this State, manufacture for sale, offer for sale, or sell any article of food which is adulterated, within the meaning of this act."

Section 2: "The term 'food,' as used herein, shall include all articles used for food or drink, or intended to be eaten or drunk by man, whether simple, mixed, or compound."

Section 3: "An article shall be deemed to be adulterated, within the meaning of this act: *One*, if any, substance or substances have been mixed with it, so as to lower or depreciate or injuriously affect its quality, strength, or purity; *two*, if any inferior or cheaper substance or substances have been substituted wholly or in part for it; *three*, if any valuable or necessary constituent or ingredient has been wholly or in part abstracted from it; *four*, if it is sold under the name of another article; *five*, if it consists wholly or in part of a diseased, decomposed, putrid, infected, tainted, or rotten animal or vegetable substance or article, whether manufactured or not, or, in case of milk, if it is the product of a diseased animal; *six*, if it is colored, coated, polished, or powdered, whereby damage or inferiority is concealed, or if by any means it is made to appear better or of greater value than it really is; *seven*, if it contains an added substance or ingredient which is poisonous or injurious to health: *Provided*, that the provisions of this act shall not apply to mixtures or compounds recognized as ordinary articles or ingredients of articles of food, if each and every package sold or offered for sale be distinctly labeled as mixtures or compounds, and are not injurious to health."

Section 19 makes any violation of the act a misdemeanor, and provides a penalty by a fine of not less than

$100 nor more than $500, or by imprisonment in the county jail, etc.

On the trial, respondent admitted that on the 19th day of April, 1897, he, at the city of Monroe, this State, offered for sale, and did sell, to Carl Franke, a quantity of mustard, to wit, a quarter of a pound, which was afterwards found upon a chemical examination to be colored and adulterated with tumeric, whereby the said mustard, as an article of food, was damaged, and its inferiority concealed, and it was thereby made to appear of greater and better value than it really was; the same not being a mixture or compound recognized as an ordinary article or ingredient of articles of food. But he claimed that said article of mustard so sold was purchased by him as a pure article in good faith, and that he believed at the time of the purchase by him, and also at the time of the sale to the said Franke, that the same was pure mustard, free from any coloring and adulteration with tumeric or any other coloring or adulterant, and that no inferiority was concealed whereby it was made to appear of greater or better value than it really was; that, at the time he purchased the same, he asked for pure mustard, and that the same was warranted to him as pure; that he did not make or cause to have made a chemical examination of the same, and did not inform himself or endeavor to ascertain the methods of determining pure from impure mustards, but relied upon the representations of his vendor and the appearance of the article to the eye; and that he did not intend to violate the law. From such conviction, respondent appeals.

It is the contention of counsel for respondent that it was the intent of the legislature to provide by the act that no person should be convicted and punished for selling adulterated food or drink without showing that he knew the same to be adulterated; that the information does not charge such knowledge, and the proofs disclose that respondent acted in good faith, and in the belief that the article sold was pure and unadulterated. The act cannot

be so construed. The offense under the act consists in selling an article intended to be eaten or drunk which is adulterated. Section 8 of the act shows conclusively that the legislature did not intend to make criminal intent or guilty knowledge a necessary ingredient of the offense.[1] As a rule, there can be no crime without a criminal intent; but this rule is not universal. In *People* v. *Roby*, 52 Mich. 577 (50 Am. Rep. 270), the respondent was convicted of the offense, under the statute, of keeping his saloon open on Sunday. It was there said:

"It is contended that, to constitute an offense under the section referred to (1 How. Stat. § 2274), there must be some evidence tending to show an intent on the part of the respondent to violate it. * * * The section under which Roby is prosecuted makes the crime consist, not in the affirmative act of any person, but in the negative conduct of failing to keep the saloon closed. As a rule, there can be no crime without a criminal intent; but this is not by any means a universal rule. One may be guilty of the high crime of manslaughter when his only fault is gross negligence, and there are many other cases where mere neglect may be highly criminal. Many statutes which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."

Many cases are cited in that case where convictions were sustained although the element of guilty knowledge was lacking. Thus, in Massachusetts a person may be convicted of the crime of selling intoxicating liquor as a beverage, though he did not know it to be intoxicating (*Com.* v. *Boynton*, 2 Allen, 160); and of the offense of selling adulterated milk, though ignorant of its adulteration (*Com.* v. *Farren*, 9 Allen, 489; *Com.* v. *Nichols*, 10 Allen, 199; *Com.* v. *Waite*, 11 Allen, 264 [87 Am. Dec. 711]; *Com.* v. *Smith*, 103 Mass. 444). In Missouri a

---

[1] This section reads as follows: "No person shall knowingly offer, sell, or expose for sale, in any package, cheese which is falsely branded or labeled."

magistrate may be liable to the penalty for performing the marriage ceremony for minors without consent of parents or guardians, though he may suppose them to be of the proper age. *Beckham* v. *Nacke*, 56 Mo. 546. Where the killing and sale of a calf under a specified age is prohibited, there may be a conviction though the party was ignorant of the animal's age. *Com.* v. *Raymond*, 97 Mass. 567. In *People* v. *Welch*, 71 Mich. 548, this court, in speaking of *People* v. *Roby*, *supra*, said:

"When a statute does not make intent an element of the offense, but commands an act to be done or omitted which, in the absence of the statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute will not excuse its violation;" citing *State* v. *Hartfiel*, 24 Wis. 60.

In the late case in this court of *Wolcott* v. *Judge of Superior Court*, 112 Mich. 311, the relator, as prosecuting attorney of the county, filed an information against one Fred Saunders, charging him with being engaged in selling liquor without giving the bond required by the statute. The bond was fair upon its face, but one of the sureties, it appears, was disqualified, under section 2283*d*1, 3 How. Stat. The information did not allege that respondent had knowledge of this defect in the bond. The information was quashed by the court below, and the relator asked the aid of *mandamus* to compel the respondent to reinstate the case. It was said by this court in the majority opinion:

"It was the intention of the legislature to make the execution and delivery of the prescribed bond a condition precedent to sale, and to require the person desiring to engage in the business mentioned to assume the responsibility of knowing that the bond, when presented, complies in all essential particulars with the law. He must know that his sureties are males; that they are resident freeholders of the township, village, or city in which the business is to be carried on; that they hold none of the offices prohibited by the act; and that, at the time the bond is filed, neither is a surety upon more than two bonds required by the act."

It appeared that one of the sureties was already upon more than two bonds, and the writ was granted, compelling the respondent to reinstate the case. The case of *People* v. *Roby, supra,* was cited in that case in support of the proposition that intent was not an ingredient of the offense.

These regulations are under the police power of the State. Undoubtedly, it was competent for the legislature to prohibit the sale of adulterated articles of food and drink. The police power of the State extends to the protection of the health, as well as of the lives and property, of the citizens. Generally, it is for the legislature to determine what laws and regulations are needed to protect the public health and secure the public comfort and safety. If it passes an act ostensibly for the public health, and thereby destroys or takes away the property of the citizen or interferes with his liberty, it is for the courts to determine whether it relates to and is appropriate to promote such public health. Under the police power, the conduct of individuals and the use of property may be regulated, so as to interfere to some extent with the freedom of the one and the enjoyment of the other. It cannot be doubted that the legislature intended by this act to protect the public against the harmful consequences of sales of adulterated food, and, to the end that its purpose might not be defeated, to require the seller, at his peril, to know that the article which he offers for sale is not adulterated. As was said by the supreme court of Ohio in *State* v. *Kelly,* 54 Ohio St. 166: "If this statute had imposed upon the State the burden of proving * * * his knowledge of its adulteration, it would thereby have defeated its declared purpose."

In *State* v. *Smith,* 10 R. I. 260, the court, in speaking of the offense of selling adulterated milk, said:

"Counsel for defendant asked the court to charge that there must be evidence of a guilty intent on the part of the defendant, and of a guilty knowledge, in order to convict him. Our statute, in that provision of it under which this indictment was found, does not essentially differ

from the statute of Massachusetts; and there, previous to the enactment of our statute, the supreme court had determined that a person might be convicted although he had no knowledge of the adulteration, the intent of the legislature being that the seller of milk should take upon himself the risk of knowing that the article he offers for sale is not adulterated."

Statutes in many States have been passed providing that whoever sells, or keeps or offers for sale, adulterated milk, or milk to which water or other foreign substance has been added, shall be punished, etc. Under these statutes, it has been decided many times that the risk is upon the seller of knowing that the article he offers for sale is not adulterated, and that it is not necessary in an indictment under such a statute to allege or prove criminal intent or guilty knowledge. *Com.* v. *Smith,* 103 Mass. 444; *Com.* v. *Warren,* 160 Mass. 533; *People* v. *Cipperly,* 101 N. Y. 634. The same rule that no criminal intent is necessary has been held to apply under an act forbidding the sale of oleomargarine or other imitations of dairy products unless express notice be given to the purchaser. *Bayles* v. *Newton,* 50 N. J. Law, 549; *Com.* v. *Gray,* 150 Mass. 327. The English rule is in keeping with the doctrine in this country on this subject. *Roberts* v. *Egerton,* L. R. 9 Q. B. 494.

The statute not requiring knowledge on the part of the seller to make the offense complete, we are satisfied that the conviction must be sustained. No case has been cited, and we are not able to find one, where a contrary doctrine is laid down. The act may work hardship in many cases, but that question is one to be addressed to the legislature, and not to the courts. As we have said, it was within the power of the legislature to pass the act making it an offense punishable with fine and imprisonment to sell adulterated food or drink, although the person selling the same has no knowledge that it is adulterated. Under this statute, one making sales must do so at his peril.

The conviction is affirmed.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. GRANT, J., did not sit.