PEOPLE v. JEWELL.

1. RECORDS—TAX STATEMENT—ABSTRACTION—CRIMINAL OFFENSE.
    A tax statement, made under 1 Comp. Laws, § 3843, and deliv-
    ered to the supervisor, is, though not sworn to, a public record
    under 3 Comp. Laws, § 11361, making it a criminal offense to
    carry away a public record.

2. SAME—PROVISIONAL STATEMENT—INTENT TO SUBSTITUTE.
    A statement so prepared and delivered is a paper or record
    "belonging or appertaining to the office" of a township,
    within the meaning of section 11361, 3 Comp. Laws, although
    there was an intention to amend such statement by substitut-
    ing another therefor, where no such amended or substituted
    statement was ever prepared.

3. SAME—CRIMINAL INTENT.
    In order to constitute the offense of carrying away or destroy-
    ing a public record denounced by 3 Comp. Laws, § 11361, the
    act must be accompanied by a criminal intent.

Exceptions before judgment from Livingston; Smith,
J. Submitted June 17, 1904. (Docket No. 192.) De-
cided December 30, 1904.

Fobes C. Jewell was convicted of carrying away a pub-
lic record. Reversed.

*Person & Person*, for appellant.

*Edmund C. Shields*, Prosecuting Attorney, for the peo-
ple.

MONTGOMERY, J. The respondent was convicted of a
violation of section 11361, 3 Comp. Laws, which contains
the following provision :

" All books, papers, and records, belonging or in anywise appertaining to the offices of the several townships and school district officers of this State, are hereby declared to be public property, belonging to the people of the State of Michigan, to be used and preserved by and under the direction of said officers, and be by them preserved during their continuance in office; and any person or persons who shall willfully carry away, mutilate, or destroy any of such books, papers, records, or any part of the same   *   *   *   shall, on conviction thereof, be deemed guilty of a misdemeanor, and shall be punished by fine not exceeding one thousand dollars, or imprisonment in the State prison not exceeding three years."

The testimony disclosed that in the spring of 1903 one G. A. Kirkland was the supervisor of the township of Iosco, Livingston county, and in his official capacity called upon the respondent for a statement of his taxable property. Such a statement was made out and signed by the respondent and left with the supervisor, who took it to his office. The respondent stated that in a certain contingency he might wish to make a change in the statement later. A few days later the respondent went to the office of the supervisor, the statement was produced, and an attempt made to make a new statement. This was, however, abandoned. The first statement disappeared during the conversation, and respondent, on being asked for it, declared that he must have torn it up and thrown it in the stove. A search of the stove being made disclosed that it was not there, and the inference which the jury drew, that the respondent took it away, was amply justified.

Two questions are discussed in the brief of respondent's counsel. It is contended, first, that the paper in question does not fall within the terms of the statute. So far as this question depends upon the fact that the statement was not sworn to, section 3843, 1 Comp. Laws, determines its character as a public document, as by the express terms of that statute the supervisor was required to retain the same in his office. It is said, however, that, as there was a declared

purpose to amend this statement or substitute another for it, this paper never became a part of the public record. We do not think any such inference is justified. What the effect of substituting another paper for the original may have been is not the question. The statement was signed and delivered to the supervisor, intended to be effective, at least until a substitute was prepared, and this was never done.

The second point relied upon is the failure of the circuit judge to give respondent's fourth request, as follows:

"If Jewell did carry away the paper it was not willful if Jewell thought he had a right to carry it away."

The court did charge the jury as follows:

" 'Willfully' means designedly and intentionally. I don't think it would be necessary to establish the fact that he did it maliciously, or that his intention must have been to that wicked extent that would be involved in the crime of larceny; but he must have acted knowingly, and must have willfully intended to take that paper away from his office and keep it away from there to deprive the supervisor of that township, the officer, the supervisor, of the custody of that paper permanently. He must have intended to have done that before you can find him guilty; he must have had that intent; the defendant must have had that intent to remove that from that office, to carry it away without justification or excuse."

What we might conclude upon the merits of this question of good faith is unimportant here. The effect of this charge was to permit the jury to find a man guilty of a State prison offense in the absence of a criminal intent. We do not overlook a class of cases where the question of criminal intent is unimportant, such as cases arising under the game, fish, pure food, and liquor laws. Many such cases are found in our own and other reports. *People* v. *Waldvogel,* 49 Mich. 337; *People* v. *Blake,* 52 Mich. 566; *People* v. *Roby,* 52 Mich. 577; *People* v. *Neumann,* 85 Mich. 98; *People* v. *Potter,* 89 Mich. 353; *City of Grand Rapids* v. *Bateman,* 93 Mich. 135; *Wolcott* v.

*Judge of Superior Court,* 112 Mich. 311; *People* v. *Snowberger,* 113 Mich. 86; *People* v. *Bacon,* 117 Mich. 187.

These cases arise upon statutes, and while, in statutory as well as common-law crimes, the necessity of a criminal intent is ordinarily maintained, it is not beyond the power of the legislature to make an act criminal in the absence of such intent. See 12 Cyc. 148, citing *People* v. *Welch,* 71 Mich. 548, and other cases, to which may be added *Faulks* v. *People,* 39 Mich. 200.

The court in *People* v. *Roby,* 52 Mich. 577, asserts that "as a rule there can be no crime without a criminal intent," and perhaps implies that it becomes a question of legislative intent for the court to ascertain from the statute. See, also, *City of Grand Rapids* v. *Bateman,* 93 Mich., at page 138, where the following quotation from *People* v. *Roby,* supra, is found:

"Many statutes which are in the nature of police regulations impose criminal penalties irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."

Also, see cases cited in 12 Cyc. 148, 149, 151.

In our opinion there is nothing in this legislation to indicate an intent to punish an innocent, though intentional, taking away, and we regard the use of the term "willful" as "implying an evil intent without justifiable excuse." See cases cited in *Highway Com'rs of Eagle Township* v. *Ely,* 54 Mich., at page 180. The latter case, cited in support of this conviction, does not in our opinion justify it. The present case is more nearly like that of *State* v. *Preston,* 34 Wis. 675, which was distinguished from *Highway Com'rs of Eagle Township* v. *Ely* in the latter case.

The judgment should be reversed, and a new trial ordered.

The other Justices concurred.