## PEOPLE v. WORGES.

1. CRIMINAL LAW—EVIDENCE—POPULATION—CENSUS—ESTIMATE.
   Testimony that the population of a township had increased since the last census, and that in the judgment of the witnesses, being officials and others, the population was more than 1,000 at the time the township board passed a resolution authorizing respondent to keep his saloon open until 11 p. m., was properly excluded in the absence of an actual enumeration of the inhabitants.

2. SAME—TRIAL—ADMITTED FACTS—TRIAL BY JURY—DIRECTING VERDICT—INSTRUCTIONS.
   It was not error for the trial court to advise the jury, after they had been out some time, that they ought not to have any difficulty in reaching a verdict of guilty, but that they must pass on the question, permitting the jury to retire and bring in a verdict against respondent who had admitted the fact of keeping his saloon open after 9 p. m.

3. SAME—GOOD FAITH.
   The fact that a retail liquor dealer kept his saloon open after 9 p. m., relying in good faith on a resolution of the township board permitting him to remain open until 11 p. m., was no defense to a prosecution in which it was not proved that the population of the township, shown to have been 721 at the last census, had thereafter increased above 1,000. Act No. 291, Pub. Acts 1909, § 17 (2 How. Stat. [2d Ed.] § 5071).

Exceptions before sentence from Bay; Collins, J. Submitted April 17, 1913. (Docket No. 126.) Decided September 30, 1913.

Frank C. Worges was convicted of violating the liquor law. Affirmed.

*Grant Fellows,* Attorney General, and *James L. McCormick,* Prosecuting Attorney, for the people.

*Curtis E. Pierce,* for respondent.

MOORE, J. The respondent, a regularly licensed retail dealer in liquors in the village of Mt. Forest, Mich., was informed against for keeping his saloon open after hours on the 20th day of April, 1912. Defendant pleaded not guilty. Upon the trial of said cause by a jury, respondent was convicted and sentence deferred pending appeal to this court.

Mt. Forest is not an incorporated village. The respondent runs a hotel there in connection with his saloon business. The village of Mt. Forest has no police protection outside of one or two constables elected and residing somewhere in the township of Mt. Forest. The population of Mt. Forest proper would not exceed 25.

James P. Hartley, a witness for the people, testified that the saloon was open at 9:25 p. m. and again at 9:40 p. m. Other witnesses on the part of the people testified to the same effect. Later the respondent admitted the saloon was open as stated. The county clerk produced the United States census report for the census of 1910, which showed that the population of the township of Mt. Forest, which includes the village, was 721.

On the part of the defense the following occurred:

"*Q.* The population of the township has increased since 1910?

"*The Court:* You need not answer that question. (Defendant excepted.)

"*The Court:* Just a moment. Mr. Pierce are you proposing to show any enumeration made by anybody as to the number of people or the amount of the population of that township in the year 1912?

"*Mr. Pierce:* The best I can do on that subject is to show by resident officials of the township that there has been a remarkable increase in population since the time of this census and that the population in 1912 and 1911 exceeded 1,000. I will have evidence upon that branch of the case.

"*The Court:* I knew you would have evidence on that branch of the case, and you have not answered

the question that I asked. Are you proposing to prove an enumeration made by somebody on that subject during the year 1912?

"*Mr. Pierce:* We have employed nobody to make an enumeration. There has been none made, official or otherwise, that I know of. I don't know how far that goes—no accurate enumeration, no counting nose by nose of the population, but an estimate based upon examination of conditions and the census and school reports.

"*The Court:* That is, you propose to prove by inference and by estimate?

"*Mr. Pierce:* We propose to show by creditable testimony that the opinion of these witnesses is from an examination they made that the population is over 1,000. Of course, there has been no actual enumeration either official or otherwise.

"*The Court:* Since the last ruling I have examined the liquor statute. The statute for certain purposes fixes the last United States census as the guide as to the amount of population. Now it is a matter of law that there is no State census taken, and it appears in evidence in this case, or it has been stated by counsel for defendant, that there is no claim of any official enumeration of the township since the United States census of 1910. I understand counsel to say that he does not propose to offer any unofficial census or enumeration. Is that right, Mr. Pierce?

"*Mr. Pierce:* No actual enumeration.

"*The Court:* If there was an actual census or enumeration offered unofficially, I would consider that question, but inasmuch as none is proposed to be offered I will not pass on that. .* * *

"*Mr. Pierce:* The court might not be aware of the fact, but it is a fact, which we propose to establish by competent evidence, that the township board passed a resolution authorizing the—

"*The Court:* I will admit that in evidence when we reach it.

"*Mr. Pierce:* Then I would like to interrogate the witness as to the time of the passage of that resolution, if, in his judgment, the population did not exceed 1,000 as referred to in the statute.

"*The Court:* That I would hold as incompetent. That is covered by my previous ruling. You may

have an exception to all of the ruling I have made on the subject.

"*Mr. Pierce:* Then, as I understand it, the court overrules my offer to show by this witness that at the time this resolution was passed the township population exceeded 1,000.

"*The Court:* I exclude the witness' opinion as to what the population was.

"*Mr. Pierce:* I take an exception.

"*The Court:* I wish you to have the benefit of the situation fully. I hold that, on an important question like this as to the amount of the population, the legislature never intended it to be proved by a matter of opinion; that the only competent proof of it that there could be on that subject would be an actual official or unofficial enumeration or census, and that any other testimony on that subject would be incompetent. I hold that the State census or the last United States census or the last State census would be material. I do not know just exactly how I would hold if an official township census of some kind were shown or if an unofficial township census were shown. There is no proof that either of those have been taken, so I withhold my opinion on that, and yet I am strong of the opinion that the law intends to refer the census matter to the last United States census in every case."

Mr. Ashley G. Rolfe, being duly sworn for the defendant, testified in substance as follows (examined by Mr. Pierce):

"I have resided in Mt. Forest township for about 17 years. I was highway commissioner for several years of the township of Mt. Forest until this spring, when my term expired. In my capacity as highway commissioner, my duties called me about the township and in different portions of it.

"*Q.* Has there been an increase in population there since 1910 or otherwise?

"*Mr. Hitchcock:* I object to that as irrelevant.

"*A.* There is a large—

"*The Court:* The objection is sustained.   *   *   *

"*Mr. Pierce:* We offer to show by this witness that the population of Mt. Forest at the time the resolution was passed by the township board, changing the

hours from '7 o'clock in the forenoon until 9 o'clock in the afternoon,' that at the time that resolution was passed by the township board, giving Mr. Worges upon his petition the privilege of keeping his saloon open 'from 6 o'clock in the forenoon until 11 o'clock in the afternoon,' that the population of the township of Mt. Forest was upwards of 1,000 people.

"*The Court:* Proceed with your testimony. I have understood from you plainly and clearly that you did not propose to offer any census of that, any enumeration.

"*The Court to witness:* How do you know that the population is more than 1,000 up there?

"*A.* I know what the population was, and I know how many settlers about have come into the town and about what their families are.

"*The Court:* You never have taken any census of the town?

"*A.* I have written their names up of the whole township three or four times for different firms.

"*The Court:* All of the people in the township?

"*A.* Yes, sir.

"*The Court:* You may proceed with the examination.

"*Q.* Has there been an increase in the population there since 1910 or otherwise?

"*Mr. Hitchcock:* I object to that as incompetent, calling for an opinion. It is not a census or enumeration.

"*The Court:* In so far as it is a matter of opinion, it is objectionable. He may state any facts he has in reference to the matter.

"*Q.* What would you say at that time the population was?

"*Mr. Hitchcock:* Same objection.

"*The Court:* That calls for an opinion, and it is not competent.

"*Mr. Pierce:* Your honor asked him some questions, and, having answered the questions, I thought you had modified the ruling.

"*The Court:* I modified it as to facts and only as to facts, not as to opinion.

"*Q.* How many people at the time the resolution was passed in 1911 would you say the township of

Mt. Forest had; what was the population of the township?

"*Mr. Hitchcock:* Same objection.

"*The Court:* Same ruling. I have already ruled on that.

"*Mr. Pierce:* We take an exception to the ruling of the court."

The township clerk was sworn and produced the records of the meetings of the township board.

"*The Court:* The record may be read in evidence, and it may be made a part of the record in the case, and the whole matter will be covered by a ruling later.

"It appears from the record that, prior to the time respondent went into business at Mt. Forest, communications were had between him and the township board of Mt. Forest, and that he made an application to the township board for a liquor license; that at a meeting of the town board of the township of Mt. Forest, held on the 14th day of April, 1910, the full board being present, it was resolved:

" 'That the application of F. C. Worges for retailing liquor in the village of Mt. Forest be accepted, providing that he puts up a good cement building and keeps a good general hotel.'

"On the 13th day of September, 1911, at a meeting of the township board of Mt. Forest township, the following motion was put to vote and carried:

" 'Motion made by C. Heppner, supported by F. Stevens, that the petition of Frank C. Worges to keep his saloon open from 6 o'clock in the forenoon until 11 o'clock in the afternoon, standard time.' "

"*Q.* The Frank C. Worges referred to in that resolution is the defendant in this case, is that right?

"*A.* Yes, sir.

"*Q.* I will ask you whether or not, at the time that resolution was passed, the population of the township of Mt. Forest exceeded 1,000?

"*Mr. Hitchcock:* Same objection. (Objection sustained, and defendant excepted.)

"*The Court:* You never made any census of the town, did you, Mr. Quigley?

"*A.* No, sir; all I had was my school census I make every year.

"*Mr. Pierce:* I think that about the only point to pass upon is the point of law. I will concede that the defendant on the 20th day of April, 1912, at the time alleged in the information filed against him in this case, kept his saloon open at the time sworn to by the people's witnesses, I think that is all.

"*The Court:* I presume that your client justifies under the resolution of the town board. Is that a part of your case?

"*Mr. Pierce:* Yes, I was going to swear the defendant.

"*The Court:* You may if you wish.

"*Mr. Hitchcock:* If Mr. Pierce wants to have that statement appear in the record, it may be put in to save time.

"*The Court:* Yes, your client is entitled to that presumption in the case.

"*Mr. Pierce:* Yes, acting on this resolution, the defendant in this case in good faith and honestly thought he had the right to keep his saloon or place of business open up to the hour in the afternoon, to wit, 11 o'clock, indicated in said resolution.

"*The Court:* Those presumptions are reasonable, in favor of the defendant, that he acted on that theory."

The respondent preferred the following requests to charge:

"*First.* If you find from the testimony that the defendant honestly and in good faith considered that he had the right to keep his saloon open from 6 o'clock in the forenoon until 11 o'clock in the afternoon, and that this privilege was granted him by the township board of Mt. Forest township, and you further find from the evidence that defendant's saloon was closed at or before 11 o'clock, standard time, on the 20th day of April, 1912, I charge you that defendant should be acquitted and your verdict should be not guilty.

"*Second.* The general rule prevailing in criminal cases is that a defendant cannot be convicted of a crime unless he had a criminal intent, and I charge you that if you find from the evidence in this case

that defendant believed that he had the legal right to keep his saloon open until 11 o'clock in the afternoon, and that he did not intend to violate the law, then you should acquit the defendant."

Defendant duly excepted to the refusal of the court to give these requests. He charged the jury in part as follows:

"The Warner-Cramton liquor law of this State, § 17, says in substance that all saloons and all other places where liquors mentioned in the act are sold or kept for sale, shall be closed at certain times, and in mentioning the times it says, 'and on each week day night from and after the hour of 9 o'clock until 7 o'clock of the morning of the succeeding day; so that the general law makes the broad statement that saloons shall be closed from 9 o'clock on until 7 o'clock the next morning. The law goes on further and says, 'It shall be the duty of sheriffs, marshals, constables and police officers to close all saloons,' etc. It further says, 'The word "closed" in this section shall be construed to apply to the back door or other entrance, as well as to the front door; and in prosecutions under this section it shall not be necessary to prove that any liquor was sold: *Provided,* that in all cities, incorporated villages and townships of not less than 1,000 population, exclusive of villages, where there is police protection, the common council or board of trustees, or council, or township board, may by ordinance allow the saloons and other places where said liquor shall be sold to open at 6 o'clock in the forenoon and to remain open not later than 11 o'clock in the afternoon.' That makes an exception to the general law which I have stated to you, and that exception can only be effective by the action of the township. *  *  *

"Now, assuming to act under that provision of the law, the township board passed a resolution authorizing the defendant to keep his place of business open from 6 in the morning until 11 in the evening, and the defendant claims, and it is not questioned, that, relying upon that law, he kept his saloon open during the times from 6 until 11. The question comes up as to whether the case presents any legal right for him to have taken this step. *  *  *

"*First,* as to the population, it appears by the census of 1910 that the population of the township was between 700 and 800. In another place the Warner-Cramton law refers to the last census as a guide in determining population, and I think that is reasonable, because I think that there must be some definite statement of population.

"Now, there has been no census taken since then. Possibly the question might be a little more clear if some person had made an enumeration by the counting of the population and had been ready to testify to that, but there was no testimony of that kind in the case. You have heard the testimony that was offered, and I hold that under the situation in this case no testimony was offered and none produced showing that the population was 1,000, so that this defendant did not have that proposition in his favor when the township board acted, and the township board does not assume to have expressed any opinion on the question of population, and there is nothing to prove that they considered that question at all, but on that account, and for the reasons that I have stated, the population was not shown to be more than 1,000 when the resolution was passed, and it is not shown by any competent testimony to be 1,000 up to the present time.

"There is another much more important question in the case. You will observe that one of the conditions which would be necessary before the board could legally act upon would be this: This could only be enacted where there is police protection. Now I hold as a matter of law, under the testimony in this case, that the township board was not authorized to act upon that proposition because there was and is no showing that the township at that time had any police protection. The showing is that there were some constables elected, but I do not believe that the office of constable equals that of the office of policeman. I do not believe under the law that the fact that there are constables in a township affords the police protection required by the statute. That is practically made to appear in one clause here, 'It shall be the duty of sheriffs, constables, marshals and police officers;' the statute itself making the plain distinction between constables and police officers.   *   *   *

"In cases of this kind, notwithstanding the fact that there is no dispute about the testimony, it is the duty of the jury to pass upon the question and report to the court whether the defendant is or is not guilty. So you may retire to your jury room and bring in your verdict. If the defendant had his place of business open after 9 o'clock on the evening in question, he is guilty. You may retire, gentlemen."

Thereupon the jury, having been out for a time, were brought into court and the following took place:

"*The Court:* Have you agreed upon a verdict, Mr. Foreman?

"*The Foreman:* We have not.

"*The Court:* Does there seem to be any difficulty in understanding the charge of the court?

"*The Foreman:* No, there does not seem to be no misunderstanding, only some of them vote, but they don't say anything, and we voted, and I tell them to think it over a little bit and we vote again.

"*The Court:* There is no dispute in the testimony in the case, gentlemen. The testimony of the people shows that the saloon was open after 9 o'clock. The defendant did not introduce any testimony, so that it is proved that the saloon was open after 9 o'clock and not disproved. The court instructed you that, if the saloon was open after 9 o'clock on the day in question, it was your duty to bring in a verdict of guilty. The fact that the town board passed a resolution is no protection to the defendant in any way. It is no defense. So far as the law is concerned, that resolution of the town board was worth no more than the resolution of anybody anywhere in the State. It is no protection whatever. The case appears to be clear, and I should think you would have no difficulty in at once reaching a conclusion that the defendant was guilty. In criminal cases the jury, however, must finally pass upon the question. You may retire.

"Thereupon the jury retired, and having been out for a time, they returned and rendered a verdict of guilty as charged against respondent."

Because of the questions raised by counsel for respondent, we have deemed it necessary to quote all

of the material parts of the record. We quote from the brief of counsel:

"Defendant claims that there is error in this record, and we consider the several assignments of error upon which we rely under the following synopsis:

"(1) The court erred in excluding defendant's offered testimony as to the population of Mt. Forest township.

"(2) The court erred in his instructions to the jury upon the question of police protection and in charging that defendant was not protected in any way by the resolution of the township board enlarging the time of keeping open defendant's saloon from 6 a. m. to 11 in the afternoon.

"(3) The court erred in recalling the jury while deliberating upon its verdict and directing a verdict of guilty.

"(4) The court erred in refusing defendant's first and second requests to charge."

Groups 1 and 2 may be considered together. A reference to the record which we have quoted shows that in response to an inquiry by the court, counsel said:

"*Mr. Pierce:* We have employed nobody to make an enumeration. There has been none made, official or otherwise, that I know of. I don't know how far that goes—no accurate enumeration, no counting nose by nose of the population, but an estimate based upon examination of conditions and the census and school reports."

The record also shows that the judge informed the counsel that he was simply excluding estimates, opinions, but would allow facts to be presented:

"*Mr. Pierce:* Then I would like to interrogate the witness as to the time of the passage of that resolution if, in his judgment, the population did not exceed 1,000 as referred to in the statute.

"*The Court:* That I would hold as incompetent. That is covered by my previous ruling. You may

have an exception to all of the ruling I have made on the subject.

*"Mr. Pierce:* Then as I understand it the court overrules my offer to show by this witness that at the time this resolution was passed the township population exceeded 1,000?

*"The Court:* I exclude the witness' opinion as to what the population was.

*"Mr. Pierce:* I take an exception.

*"The Court:* I wish you to have the benefit of the situation fully. I hold that on an important question like this as to the population, the legislature never intended it to be proved by a matter of opinion; that the only competent proof there could be on that subject would be an actual official or unofficial enumeration or census; and that any other testimony on that subject would be incompetent. I hold that the State census or the last United States census or the last State census would be material. I do not know just exactly how I would hold if an official township census of some kind were shown, or if an unofficial township census were shown. There is no proof that either of those have been taken, so I withhold my opinion on that, and yet I am strong of the opinion that the law intends to refer the census matter to the last United States census in every case."

No actual counting, made officially or unofficially, was shown or offered to be shown. There is nothing to show that the question of population was presented to the township board when the resolution was passed, or that they were actuated by the matter of population. We agree with the circuit judge that there was no competent testimony offered that when the resolution was passed the township had a population of 1,000 people. This makes it unnecessary to pass upon the question of whether the population must be shown by the last official census. It also makes it unnecessary to pass upon the question of whether the judge was right in what he said in relation to police protection.

3. Did the court err when it recalled the jury and

after making inquiries again instructed them to bring in a verdict of guilty? Counsel say:

"When a trial court goes further, and on his own motion recalls the jury, and says among other things: 'I should think that you would have no difficulty in at once reaching a conclusion that the defendant was guilty.' 'In criminal cases the jury, however, must finally pass upon the question.' 'You may retire'— then we contend that the verdict became that of the court, and defendant's constitutional right to a trial by jury was denied. *People* v. *North,* 153 Mich. 612 [117 N. W. 63]; *People* v. *Doyle,* 160 Mich. 423 [125 N. W. 358]."

In the case at bar the facts are not in dispute. They were admitted by respondent. The jury retired to the jury room before bringing in their verdict. The cases cited, so far as they are applicable at all, sustain the action of the trial judge.

4. Did the judge err in declining to give defendant's requests to charge? Counsel say:

"Now, if the defendant acted in good faith and honestly thought he had the right to keep his saloon open until 11 o'clock in the evening, then he had no intention of violating the law, and the question of good faith and criminal intent were questions which should have been submitted to the jury, and defendant's first and second requests should have been submitted to the jury; and the court's refusal to give these requests, we insist, is error."

This contention is not sustained by the rulings of this court. In cases of this nature good faith is not a defense to illegal sales of intoxicating liquors. *People* v. *Roby,* 52 Mich. 577 (18 N. W. 365, 50 Am. Rep. 270); *People* v. *Blake,* 52 Mich. 566 (18 N. W. 360); *People* v. *Minter,* 59 Mich. 557 (26 N. W. 701); *Wolcott* v. *Judge of Superior Court,* 112 Mich. 311 (70 N. W. 831); *People* v. *Snowberger,* 113 Mich. 86 (71 N. W. 497, 67 Am. St. Rep. 449); *People* v.

*Gordon,* 156 Mich. 237 (120 N. W. 578, 21 L. R. A. [N. S.] 136). We find no reversible error.

The case is affirmed and will be remanded for further proceedings.

STEERE, C. J., and MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.