PEOPLE *v.* BROWN.

1. INTOXICATING LIQUORS—AFFIDAVIT FOR SEARCH WARRANT—RE-
MOTENESS.

An affidavit for a search warrant which stated that de-
ponent, four days previously, had bought a half pint of
intoxicating liquor from an employee of defendant, at a
public resort kept by defendant, was sufficient to authorize
issuance of the warrant; the time not being too remote.

2. SAME—FINDING OF PROBABLE CAUSE.

Recital in the search warrant of the facts stated in the
affidavit, followed by a command to search, is in effect a
finding of probable cause by the justice.

3. SAME—INTENT NOT A DEFENSE.

In a prosecution for violating the prohibition law, where
the evidence showed that defendant mixed an extract con-
taining 50 per cent. alcohol and a bitters containing 18
per cent. alcohol with sweet cider, requested instructions
that unless he intended to violate the law, and unless he
prepared the mixture intending to make an intoxicating
drink from them, he could not be convicted, were properly
refused.

4. CRIMINAL LAW—TRIAL—STATEMENTS TO JURY SHOULD BE MADE
IN INSTRUCTIONS ON WHICH ERROR MAY BE ASSIGNED.

Statements to jurors by the court as to the importance of
their task in the jury room should be made, if at all,
in the instructions to the jury, which are taken by the
stenographer, and on which error may be assigned, rather
than to prospective jurors on opening of the term, and
although at such time it is proper to warn them against
indiscreet conduct which would tend to disqualify them
or affect their competency, no allusion should be made
to any cases or classes of cases pending, or to the result of
cases theretofore tried in the court.

5. SAME—HARMLESS ERROR.

In a prosecution for violating the prohibition law, where
defendant's own admission showed that he had violated

[1]Intoxicating Liquors, 33 C. J. § 371; [2]Id., 33 C. J. § 379; [3]Id.,
33 C. J. §§ 192, 547; [4]Criminal Law, 16 C. J. § 2093; [5]Id., 17 C.
J. §§ 3600, 3611.

the law, and his defense of lack of intent was no defense, a statement by the court to the jurors, at the opening of the term, although erroneous, was not prejudicial to defendant.

Exceptions before judgment from Washtenaw; Sample (George W.), J. Submitted June 16, 1927. (Docket No. 92.) Decided July 29, 1927.

Fred Brown was convicted of violating the liquor law. Affirmed.

*Jacob F. Fahrner* and *Carl A. Lehman,* for appellant.

*William W. Potter,* Attorney General, and *Carl H. Stuhrberg,* Prosecuting Attorney, for the people.

SHARPE, C. J. Defendant reviews his conviction on a charge of violating the liquor law on exceptions before sentence. The specific charge is that he did have in his possession ten gallons of intoxicating liquor on April 27, 1923. The justice's return was filed on May 29, 1923; the information on October 1st of that year; the verdict was rendered on May 6, 1925; motion for new trial denied on July 15, 1925; the record filed in this court on May 6, 1926; defendant's brief filed on May 21, 1926, and the brief of the prosecuting attorney on June 15, 1927, the day the case is placed on call. The delay is not accounted for. It is but fair to say that the present prosecutor did not assume office until January 1, 1927. It is not surprising that the legislature, by the enactment of the new criminal code, has heeded a demand that such delays should not be permitted.

The incriminating liquor was secured under a search warrant. A motion to suppress was timely made. It was based on the claim that the affidavit did not state sufficient reasons for its issue. It was sworn

to on April 27, 1923, and in it the affiant deposed that the defendant maintained a place of public resort on Main street in the city of Ann Arbor where intoxicating liquors were kept for sale, and that—

·"He the said deponent did on the 23d day of April, 1923, in the above named place of public resort, to wit, 111 North Main street in the city of Ann Arbor, buy of one Wm. Hoppe, the employee of the within named Fred Brown, one-half pint of an intoxicating liquor called 'soup.' "

It is urged that the date on which the affidavit was sworn to (four days after the purchase) was too remote. This contention is without merit. The defendant was keeping a public place. That a half pint of intoxicating liquor was sold therein by an employee on the 23d justified the justice in issuing a warrant for its search on the 27th. The time was not too remote. *People* v. *Mushlock*, 226 Mich. 600.

It is also urged that the warrant contains no sufficient finding of the justice to justify its issue. It recites:

"Whereas there has been filed with the undersigned a sworn complaint or affidavit of which the following is a true copy (inserting it). These are therefore to command you" etc., etc.

The form in this respect is similar to that before this court in *Hastings* v. *Haug*, 85 Mich. 87. The recital of the facts stated in the complaint, followed by the command to search, is in effect a finding of probable cause.

Ten gallons of intoxicating liquor, containing from 11 to 16 per cent. of alcohol, were found on the premises. The defendant as a witness in his own behalf testified that this liquor was made by him by mixing a quantity of Bordeaux extract and Lash's Bitters with sweet cider, and, while the label on the extract stated that it contained 50 per cent. of alcohol

and that on the bitters 18 per cent., he denied knowledge that the mixture of them as kept and sold by him as a beverage was intoxicating. Error is assigned on the refusal of requests preferred by his counsel that, unless he intended to violate the law, and unless he prepared the mixture "intending to make an intoxicating drink from them," he could not be convicted. These requests were properly refused. *People* v. *Snowberger*, 113 Mich. 86 (67 Am. St. Rep. 449); *People* v. *Worges*, 176 Mich. 685.

In support of his motion for a new trial, defendant made affidavit that at the opening of the term of court, a few days before defendant's trial began, the trial court said to the prospective jurors there assembled substantially the following:

"We often hear the statement that it is better for ninety-nine guilty men to escape than for one innocent man to be found guilty. This is not the law. Our idea of the law is that every guilty man should be convicted and every innocent man should be found innocent. I think there has been little, if any, criticism of the work of those who have served as jurors in this court before you or before this time. We have had splendid jurors in the past and I hope and believe that you men will measure up to the standard set by them."

It was urged that such an instruction, if given on the trial, would have been prejudicial and erroneous, and that the jurors were doubtless influenced by it. In denying the motion the court said:

"Counsel for respondent do not set up correctly what the court did state to the jury on the opening day of the term. The court is in the habit on the appearance of each new jury at each term of court to instruct them as to their duties in the causes in which they will be expected to take part. What the court did say, in substance, to the jury, among other things, on the opening day of term, was that in all likelihood they would be required to sit in both civil and criminal cases and explained the rules of preponderance of the

proof applicable in civil cases and the rule of reasonable doubt applicable on the criminal side of the court. The court also said, in substance, to the jury, 'We often hear the statement that it is better for ninety-nine guilty men to escape punishment than it is for one innocent man to be found guilty.' The court did not say that this is not the law or that our idea of the law is that every guilty man should be convicted and every innocent man should be found innocent, but the court did say that, 'The ideal of the law is that all guilty persons should be found guilty and all innocent persons who are accused of crime, should be found not guilty.' The court did not say that there had been little, if any, criticism of the work of those jurors who have served on other juries. The court takes no cognizance of criticism offered by the public against jurors, and therefore has made no statements to any jury concerning public criticism. The court is of the opinion that the grounds set up in paragraphs fourteen to sixteen in so far as the court is correctly quoted are not grounds for new trial."

While there is no statute or rule requiring it, we apprehend that many presiding judges address the jurors present at the time they are summoned for service. It is, of course, perfectly proper to warn them not to discuss cases which may come before them for decision, and caution them against indiscreet conduct or other behavior which would tend to disqualify them or affect their competency to sit and fairly decide the matters submitted to them. No allusion should be made to any cases or classes of cases pending or to the result of cases theretofore tried in the court. What the court admits he did say would better have been left unsaid. It in no way referred to the conduct of the jurors in or out of the court room, but sought to impress on them the importance of the task they should perform while in the jury room. This should be done, if at all, in the instructions to the jury which are taken by the stenographer, and on which error may be assigned.

In view of the testimony of the defendant hereinbefore referred to, it cannot be said that error resulted from what occurred.   On his own admission he clearly violated the law in the respect charged, and the court was justified in so instructing the jury.   The defense was predicated on a lack of intent on the part of defendant to violate the law, and, as before stated, this was no defense.

The other assignments have been examined, and are found to be without merit.

The exceptions are overruled.   The trial court will proceed to sentence.

Bird, Snow, Steere, Fellows, Wiest, Clark, and McDonald, JJ., concurred.