Commonwealth *v.* Cohen, Appellant.

Argued September 29, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

438

*J. Julius Levy*, with him *Frank J. McDonnell*, for appellant.

*John W. Murphy*, Assistant District Attorney, with him *Michael J. Eagen*, District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., November 18, 1938.

Appellant was convicted in the court below of a felony—the larceny of money from certain coin boxes installed in a station lavatory by a railroad company—and has appealed to us for a new trial upon two grounds. He contends, in the first place, that he was deprived of his constitutional right to be present in court when the jurors before whom he was tried were instructed upon certain principles of law which they were told to apply in determining his guilt or innocence, and, in the second place, that the trial judge erred in admitting evidence of an alleged offer to plead guilty in consideration of a light sentence.

1. The first contention is raised by the fourth assignment, in which it is alleged reversible error was committed in that portion of the charge which reads: "You all recall the general charge of the court which was given to all the jurors at the beginning of this week. The *general principles told you then apply to this case,* regardless of the fact that only testimony on behalf of one party to the controversy has been submitted to you." (Italics supplied)

In his opinion overruling appellant's motion for a new trial the learned trial judge sought to justify this paragraph of the charge by explaining that "it has been the custom in the Court of Quarter Sessions of Lackawanna County for some time past for the judge in charge of the trial list to make a general statement to the general panel of jurors concerning their duties and obligations as jurors, and the general principles of law which apply to every criminal case. This statement or charge is given by the court on Monday morning of the trial week as soon as the roll of the general panel of jurors, who are to serve during the week, is called. It consists of a brief instruction as to the nature of the service to be expected of jurors, a brief explanation of the presumption of innocence surrounding each defendant, the duty of the commonwealth to prove its case beyond reasonable doubt, a definition of what constitutes reasonable doubt, the duty of jurors to pass upon the credibility of witnesses, and an explanation of the law of costs as applied to misdemeanors."

The case in hand was called for trial on a Tuesday afternoon and neither appellant (then confined in the county jail) nor either of his counsel was present in court on the preceding Monday morning when the "statement or charge" referred to by the trial judge was delivered to the general panel of jurors out of which the jury which convicted appellant was selected. As we understand the record, this general charge was not taken down stenographically—at least it was not transcribed—and there was no means by which appellant or his counsel could ascertain exactly what instructions were given. It forms no part of the record of this case, or any other case tried during the week, and it is impossible for appellant to secure a review by this court of the instructions then given to the jurors before whom he was subsequently tried and which they were directed to "apply" to the evidence adduced against him by the

commonwealth—appellant having offered no evidence at the trial.

Under the procedure described by the trial judge, counsel for appellant were denied any opportunity to satisfy themselves of the correctness of the definitions or descriptions given by the trial judge in his general charge of "what constitutes reasonable doubt," or of the function and effect of the "presumption of innocence," or the methods of testing the "credibility of witnesses."

In criminal cases, under our long established methods of trial, the defendant and his counsel were clearly entitled to take exceptions to, and secure a review of, any portion of a charge which they deem erroneous or inadequate. It is too clear for argument that they have been denied, in a legal sense, that right in this case. The absence of appellant when the general charge was delivered was not voluntary; he cannot be considered to have waived any of his constitutional rights. In our opinion, the instruction to the jury selected to try him that in passing upon his guilt or innocence its members should "apply" to the evidence in his case certain "general principles" of law announced by the trial judge in a "general charge," delivered on a previous occasion and in the absence of appellant and his counsel, was an invasion of his constitutional rights.

"In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face ......," is the language of section 9 of our Declaration of Rights: Const. Art. I, section 9, (PS p. 124).

In *Com. v. House,* 6 Pa. Superior Ct. 92, 109, RICE, P. J. said of the above provision: "By fair implication it secures the right to be present, not only when the witnesses are testifying, but also when the jury are being instructed as to their duties, and as to the facts and law of the case. For, how can he be heard, if neither

he nor his counsel has an opportunity to be present? To deprive him of this privilege is, of itself, error, if the instructions, although free from error, might have influenced the verdict against him." In that case the defendant was tried and convicted of having aided and abetted a municipal officer in the embezzlement of certain funds. After the jury had been out about twenty-four hours, the trial judge, in response to a note from the foreman, called them before him and gave them additional instructions in the absence of the defendant and his counsel. In reversing, this court held that a defendant, even in a trial for a misdemeanor, could not, inadvertently or otherwise, be denied the right to be present when any instructions were given to the jury. In the course of the opinion it was said (p. 110) : "The question does not turn upon the legal correctness or incorrectness of the instructions, but upon the right of the trial judge, during the adjournment of court, in the absence of the accused and his counsel, and without attempt to notify either of them to be present, to give any instructions that might influence the jury to bring in a verdict against him."

In one respect, the procedure adopted in the case at bar was more patently violative of appellant's constitutional rights than that condemned in the House case. There, the instructions given in the absence of the defendant and his counsel were written out and the transcript certified to be correct by the trial judge. Referring to this matter, it was said (p. 110) of the opinion: "Such error cannot be wholly cured by putting the instructions in writing after the rendition of verdict and allowing the defendant an exception; for, if he or his counsel had been present, explanatory instructions might have been asked and given, which, for aught we know, might have produced a different result. This consideration, alone, shows the importance of the right secured to the accused, if, indeed, argument be needed to prove it."

As already indicated, the trial judge has not undertaken in the present case to certify even his recollection of the language used in delivering the general charge which he incorporated, by reference thereto, in his subsequent specific charge to the jury sworn to try appellant. The jurors could have no other understanding of the instruction complained of than that it was their duty, in disposing of the case, to have in mind not only the instructions given them in the presence of appellant and his counsel, but also all that had been told them by the trial judge upon a previous occasion when appellant was in jail and his counsel absent from the court room.

The principle applied in the House case was reinforced in *Com. v. Gabel and Gabel,* 79 Pa. Superior Ct. 59. The defendants in that case had been charged before an alderman with keeping a gambling house. They gave bail for their appearance at the next court of quarter sessions but failed to appear either in person or by their attorney when called for trial. The trial judge ordered the plea of not guilty to be entered in their behalf, a jury was impaneled and sworn and the testimony of the commonwealth presented in their absence. The next morning the defendants appeared with their attorney who moved the court to withdraw a juror and continue the case because they had been deprived of rights guaranteed them under the constitution. Upon the overruling of this motion, counsel cross-examined some of the witnesses for the commonwealth who were recalled. The court proceeded with the case and in reversing the conviction PORTER, J., (afterwards President Judge) speaking for this court said: "Promptness in the administration of justice is commendable, but haste which disregards fundamental principles may prove disastrous. President Judge RICE said, in *Commonwealth v. House,* [supra], 'No Pennsylvania case has held, or, as we firmly believe, ever will hold, that a defendant, whether indicted for a felony or a misde-

meanor, can be tried in his absence, unless he has expressly or impliedly waived the right to be present.' The correctness of that statement has not been challenged by any decision which the industry of counsel in the present case, nor our own exhaustive research, has been able to discover."

But it is contended that the decisions in the cases we have just cited were modified by the opinion of our Supreme Court in the cases of *Com. v. Grove,* and *Com. v. Kelly,* 292 Pa. 418, 141 A. 246, overruling the judgment of this court (reversing a conviction obtained in the quarter sessions and granting a new trial) as reported in 91 Pa. Superior Ct. 553. The defendants were convicted of administering drugs and using instruments with intent to procure a miscarriage. Their convictions were reversed by this court upon the authority of *Com. v. House,* supra. The facts appearing from the record certified to this court were these: After the jury had retired, a written communication was sent by them to the trial judge in his chambers, the court not being then open, which made inquiry as to whether or not the jury might acquit on some counts in the indictments and convict on others. The trial judge wrote a reply on the same paper sent down by the jury, stating that, either or both the defendants might be acquitted or convicted on any or all of the counts in the respective indictments except the first. This paper was not preserved. The further instruction to the jury was not submitted to counsel for the defendants, nor was it given to the jury in the presence of either defendant. At the time the inquiry was sent in by the jury counsel for the defendants were in the attorneys' room, adjoining the court room, but were not called. Neither of the defendants nor his counsel knew anything about the communication between the judge and jury until after the verdict had been rendered. When the case reached the Supreme Court upon an allocatur certain facts not appearing from the record as submitted to this court were agreed upon in the Su-

preme Court. It was there agreed that the reply written by the trial judge was an exact repetition of the identical instruction which had been given the jury in the presence of the defendants and their counsel in the course of the oral charge. As we understand the opinion of the Supreme Court, the case turned in that court upon the specific agreement of counsel for the defendants that the answer written by the trial judge to the inquiry of the jury was an exact repetition of the instruction which had been given them in the presence of the defendants and their counsel. In the course of the opinion, Mr. Chief Justice VON MOSCHZISKER said: "Many cases are conceivable where the giving of instructions when neither the prisoner nor his counsel were present would constitute reversible error, because it would be plain that such instructions either harmed the defendant in the mind of the jury or might well have done so. In this case, however, it is manifest that the instructions under consideration could not have worked any harm, and, therefore, we cannot agree with the Superior Court that the act of the trial judge in giving them in the manner complained of required it to reverse what otherwise was a proper conviction of two undoubtedly guilty offenders against the law." To the same effect is *Com. v. Opolka,* 69 Pa. Superior Ct. 230.

We think the Kelly and Grove cases are clearly distinguishable upon their facts from the one now before us. We cannot here say that instructions concerning which we have no information, or means of information, "could not have worked any harm."

We do not mean even to intimate that the learned and impartial trial judge who presided in this case intended to deprive the appellant of any legal right, but we cannot avoid the conclusion that the injecting into his otherwise fair and adequate charge of a direction to the jurors to recall "the general charge of the court

which was given to all jurors at the beginning of the week" and to apply, in disposing of appellant's case, "the general principles told [them]" at that time amounted to an inadvertent denial of appellant's right to be present when the jurors trying him were "being instructed as to their duties." The fourth assignment must therefore be sustained and a retrial directed.

If the paragraph assigned for error had been entirely omitted from the charge we would have a different question. In view of our conclusion with reference to the fourth assignment, it is not necessary for us to decide in this case whether the delivery, in the absence of defendants awaiting trial and that of their counsel, of a general charge (not stenographically reported) to the entire panel of jurors at the beginning of their service would, in and of itself, be ground for the reversal of convictions subsequently obtained against such defendants.

This question has never been squarely raised in our state and we express no opinion upon it at this time. The propriety of delivering such general charges has been discussed in other jurisdictions and divergent opinions expressed. The weight of authority seems to be that the practice is dangerous unless the general charge is delivered under such circumstances that defendants about to be tried and their counsel have an opportunity to except to any portion of it they deem objectionable and to assign the same for error.

For instance in *People v. Brown,* 240 Mich. 59, 214 N. W. 935, involving a liquor law violation, statements by the trial judge in his general charge to the entire panel as to their duties as jurors were held not to require reversal, the appellate court stating (p. 936 of 214 N. W.): "While there is no statute or rule requiring it, we apprehend that many presiding judges address the jurors present at the time they are summoned for service. It is, of course, perfectly proper to warn

them not to discuss cases which may come before them for decision, and caution them against indiscreet conduct or other behavior which would tend to disqualify them or affect their competency to sit and fairly decide the matters submitted to them. ...... What the court admits he did say would better have been left unsaid. It in no way referred to the conduct of the jurors in or out of the court room but sought to impress on them the importance of the task they should perform while in the jury room. This should be done, if at all, in the instructions to the jury which are taken by the stenographer, and on which error may be assigned."

In *Chapman v. State,* 42 Tex. Cr. Rep. 135, 57 S. W. 965, it appeared that the trial judge, on each Monday of three successive weeks prior to appellant's trial on a charge of manslaughter, read the entire panel a general lecture on their duties as jurors. Defendant was not present, but his counsel was and excepted thereto. The appellate court condemned such practice as violative of defendant's right to be present when the jury is charged, and reversed because of prejudicial remarks in this general charge, citing other Texas cases in which the same practice was condemned and stating (p. 966): "There is no warrant of law for such practice. Besides, the charge is clearly wrong."

It may be proper to suggest, by way of caution, that in introducing innovations in criminal procedure the warnings of such masters of jurisprudence as Chief Justice GIBSON, in *Prine v. The Commonwealth,* 18 Pa. 103, and of President Judges RICE and PORTER of this court, in the cases to which we referred, cannot be disregarded with impunity. The case now in hand is an example of the dangers attendant upon departures from the ancient landmarks.

2. Appellant's second contention is that the trial judge erred in admitting, over the objection of his counsel, the offer of the commonwealth to prove that appel-

lant immediately following his preliminary hearing before the alderman, at which he denied his guilt, made an offer to the prosecuting police officer, G. P. Berry, to change his plea to one of guilty, provided the officer would arrange with appellant's attorney and the district attorney that appellant would be given a short sentence. The challenged question and answer read: "By Mr. Murphy (Assistant District Attorney): Now, Mr. Berry, you said he said something to you at the alderman's office. What was it he said—this defendant? A. Just as I said, he asked if he could see me a minute and I said 'Yes' and I went to one side with him and he told me if it meant anything to me that he would plead guilty providing I took it up with his attorney and the district attorney to see that he only got a few months—two or three months he specified."

The trial judge admitted the evidence, and commented upon it in his charge, as an admission of guilt.

It is argued on behalf of appellant that the statement alleged to have been made by him did not amount to an admission, or show consciousness, of guilt; that it was no more than an offer to negotiate for a compromise, and was therefore inadmissible. If the ruling was erroneous, it cannot be doubted that the error was highly prejudicial to appellant. No Pennsylvania authority ruling the exact question involved upon this branch of the case has been brought to our attention, and the decisions from other jurisdictions show a plain division of authority. The following cases announce the rule that evidence of an unaccepted offer by the defendant in a criminal case, made after the criminal prosecution has been instituted, to plead guilty upon condition that he be given a light sentence or less severe punishment, is inadmissible: *State v. Abel,* 320 Mo. 445, 8 S. W. (2d) 55; *Bennett v. Commonwealth,* 234 Ky. 333, 28 S. W. (2d) 24; *Fugate v. Commonwealth,* 254 Ky. 663, 72 S. W. (2d) 47; *State v. Mau,* 41 Wyo. 365,

285 P. 992; see also Wigmore on Evidence (2nd ed., 1923) Vol. 2, Sec. 1067, 1934, Supp., note 2. In other jurisdictions, including the federal courts, such evidence has been held admissible: *Christian v. United States,* 8 F. (2d) 732.

The cases of *State v. Abel* and *Christian v. United States,* both supra, are typical of the opposing views. In the former it was said: "The offer by the defendant was not an extra judicial confession; it was an attempted negotiation for a compromise, not of a felony, but of the punishment to be inflicted. . . . . . . The prosecuting attorney should not have been allowed to reject the conditional offer and afterwards use it against the defendant at the trial."

In the Christian case the opinion reads in part: "The conversation which the district attorney testified he had with defendant was objected to on the ground that it disclosed an offer of compromise. Needless to say, it was also evidence of guilt. Although there are authorities to the contrary, we are of opinion that the rule which excludes offers of compromise in civil cases does not apply to criminal cases."

As the judgment now before us must be reversed for the reasons stated in the preceding portion of this opinion, it is not necessary for us to rule definitely upon appellant's second contention. In view of the contrariety of opinion to which we have referred and the apparent weight of authority against the admissibility of such evidence, it is sufficient to say that the question should not have been asked.

Judgment reversed with a venire.