Commonwealth *v.* Cunningham, Appellant, et al.

Argued October 17, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadt-
feld, Parker, Rhodes and Hirt, JJ.

*Louis F. McCabe,* with him *Hubert J. Horan,* and
*Michael A. Spatola,* for appellant.

*Bryan A. Hermes,* with him *Gilliat G. Schroeder,*
Deputy Attorneys General, and *Claude T. Reno,* At-
torney General, for appellee.

Opinion by Cunningham, J., November 20, 1939:

Appellant, the operator, under a license granted by
the Pennsylvania Liquor Control Board, of a restaurant
and taproom at No. 1432 South Penn Square, Phila-
delphia, was indicted, along with Ben Young and John
Doe, alias Frank, at No. 1123 August Sessions, 1938,
of the court below, for pool-selling and book-making and
knowingly permitting the premises occupied by him to
be used on June 4, 1937, for the purpose of receiving,
registering and forwarding bets and wagers upon the
results of horse races at certain specified race-courses,
in violation of the Act of May 22, 1895, P. L. 99, 18
PS §1461.

He and his codefendants were also indicted at Nos.
1124, 1125, and 1126 of that term for the same offenses,

alleged to have been committed on June 25, September 2, and June 10, respectively. Ben Young and John Doe, alias Frank, are fugitives and appellant was tried alone on June 22, 1939. The jury returned a general verdict of "guilty"; appellant's motion for a new trial was denied and concurrent sentences of imprisonment for five months were pronounced upon each indictment; these appeals followed.

Under the conclusion we have reached, it is unnecessary to review the evidence. Even assuming for present purposes that the learned trial judge was correct in holding, as he did in refusing a new trial, that the circumstantial evidence adduced by the Commonwealth—appellant having offered none—was sufficient to sustain the verdicts, we are of opinion that the procedure adopted by the representatives of the Commonwealth, and countenanced by the trial judge, was so violative of appellant's constitutional rights that a retrial of the case is imperative.

In defense of his liberty, every defendant accused of a criminal offense is entitled to the full protection of the applicable provisions of the "Declaration of Rights," forming Article I of our Constitution. By section 6 thereof (Const. PS p. 108) it is provided: "Trial by jury shall be as heretofore, and the right thereof remain inviolate."

Section 9 (Const. PS p. 124) relates specifically to "Rights of accused in criminal prosecutions" and its first provision reads: "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel ......"

In *Com. v. House,* 6 Pa. Superior Ct. 92, 109, this provision was interpreted by RICE, P. J., (than whom no better authority can be found), as securing to a defendant the right to be present, with his counsel, whenever jurors, to whom the duty of passing upon his guilt or innocence will be committed, are instructed

upon the principles of law by which they are to be guided. "For, (said Judge RICE) how can he be heard, if neither he nor his counsel has an opportunity to be present? To deprive him of this privilege is, of itself, error, if the instructions, although free from error, might have influenced the verdict against him. Such error cannot be wholly cured by putting the instructions in writing after the rendition of verdict and allowing the defendant an exception; for, if he or his counsel had been present, explanatory instructions might have been asked and given, which, for aught we know, might have produced a different result. This consideration, alone, shows the importance of the right secured to the accused, if, indeed, argument be needed to prove it. ...... We are not to be understood as intimating, even, that the presiding judge brought any improper influence to bear upon the jury, or that the instructions were erroneous in themselves. The question does not turn upon the legal correctness or incorrectness of the instructions, but upon the right of the trial judge, during the adjournment of court, in the absence of the accused and his counsel, and without attempt to notify either of them to be present, to give any instructions that might influence the jury to bring in a verdict against him."

In the case just cited the defendant was charged with embezzlement and after the jury had been out about twenty-four hours and the court had adjourned for the day they notified the trial judge they were unable to agree. The jurors having been brought into court, the trial judge gave them additional instructions in the absence of the defendant and his counsel.

In *Com. v. Cohen*, 133 Pa. Superior Ct. 437, 2 A. 2d 560, we reversed a conviction for larceny because the trial judge, in the absence of the defendant and his counsel, delivered to the entire panel of jurors upon the first day of their service a general charge, not steno-

graphically reported, upon the principles of law applicable to the trial of criminal cases, and, at the subsequent trial of the defendant, directed the jurors then in the box to recall and apply in the case then on trial the principles explained in the prior general charge.

An examination of the record in the case at bar discloses what seems to us to be a more flagrant invasion of appellant's constitutional rights than occurred in either the House or the Cohen case.

The District Attorney of Philadelphia County had been superseded by the Attorney General of the Commonwealth with respect to the trial of a number of criminal cases growing out of a grand jury investigation into gambling and kindred offenses in the County of Philadelphia. Upon the first day of their term of service as jurors an address, similar to the general charge in the Cohen case, was delivered, in the absence of appellant and his counsel, to the entire panel, not by the presiding judge, but by the Deputy Attorney General of the Commonwealth who had charge of the prosecution of appellant and other defendants awaiting trial before the juries about to be selected out of the panel.

The eleventh reason assigned for a new trial was based upon, and raised the question of, the constitutionality of this procedure. Although the remarks of the Deputy Attorney General were not stenographically reported, the substance of his address was stated by him, to the best of his recollection, at the hearing in the court below upon the motion. It was there conceded that after explaining to the jurors that criminal prosecutions usually arise through the making of informations before a committing magistrate, either by police officers or private prosecutors, he continued:

"Before you there will also be heard cases that have arisen in a third method. These bills of indictment, in some of these cases, are what are known as Attorney

General's bills. They were not obtained either by the police arresting the defendants named in these bills, nor by the issuance of a warrant following an affidavit. These bills of indictment are allowed, as you will see when you get them, by some judge who was then presiding in the court of quarter sessions, and, on that allowance, the matters were presented to the grand jury for their investigation and action. You will note that the difference is the absence of a preliminary hearing. That type of case will also be before you, the same as the other two I previously outlined." In his stipulation, the Deputy Attorney General added: "I think I said something generally *on their duties on the doctrine of reasonable doubt."* (Italics supplied)

This is the first occasion upon which such a procedure has come to the notice of this court. We see no justification for permitting a prosecuting officer to direct the attention of jurors to the fact that they are about to try cases which have originated in an unusual manner and are being prosecuted by the chief law officer of the Commonwealth under indictments which have been specially allowed by the court. Aside from this, it was, in our opinion, a clear denial, in a legal sense, of appellant's constitutional rights to permit the Deputy Attorney General—especially in the absence of appellant and his counsel—to instruct the jurors "on the doctrine of reasonable doubt."

How can it be said appellant has been accorded his constitutional right "to be heard by himself and his counsel" when no opportunity was afforded to take exceptions to, and secure a review of, anything the Deputy Attorney General may have said with relation to the doctrine of reasonable doubt and its application, and when it is not known exactly what he did say. He had no right to instruct jurors upon principles of law even in the presence of the appellant and his counsel; that was the function and duty of the trial judge.

It is indicated in the opinion of the trial judge, supporting his denial of a new trial, that he entertained grave doubts about the procedure to which we have referred. He there said: "It may be that *no* opening statement to a general jury panel should be allowed—neither by the Court nor the prosecutor. For some time there has been doubt in the Court's mind about the propriety of such opening statements . . . . . ." Reference is also made to *Com. v. Cohen*, supra, which he correctly interpreted as indicating that "the practice of a trial judge delivering a general charge is dangerous and is to be discouraged." With the opinion in the Cohen case before him, it seems to us the conclusion should have been drawn that if such practice by a presiding judge is "dangerous" a similar procedure upon the part of a prosecuting officer is not merely dangerous but absolutely unwarranted.

The refusal of a new trial seems to have been based upon a misconception of the underlying issue and a misunderstanding of the record. An excerpt from the opinion of the court below reads:

"However, as we read the Deputy Attorney General's statements in this case, we see no prejudice or wrong to the defendant. They are in the main statements as to how prosecutions are started and how indictments are found. So that if it was error to have allowed it, it was because it should not be allowed at all, as the statements were not prejudicial since they were general and did not go to the fundamental principles (e. g., presumption of innocence or reasonable doubt), which every accused is entitled to have enunciated and particularized in his own trial."

The remark that the statements "did not go" to such fundamental principles as "presumption of innocence and reasonable doubt" is contradicted by the record at page 64a. It clearly appears from the stipulation of the Deputy Attorney General there made that he did instruct the jurors "on the doctrine of reasonable

doubt." As this record stands, no one can say with any degree of assurance that the remarks were not prejudicial to appellant. As already indicated, the accuracy or inaccuracy of the instructions as a matter of law is not the point upon which the motion for a new trial should have been decided.

The issue upon this branch of the case does not relate to the "propriety" of permitting a prosecuting officer to instruct jurors upon principles of law; it goes far deeper than that. Plainly stated, the question raised by the fifth, sixth and seventh assignments of error is whether appellant was denied one of the rights secured to him by Section 9 of our "Declaration of Rights." For the reasons above stated we think he was. These assignments are not based on mere technicalities but, as in the House case, raise a question of substantial right as well as a question of practice of the highest importance in the administration of criminal justice. The following quotations from the opinion in that case are applicable here:

"It has been well said of another constitutional guaranty and may be said as appropriately here: 'It is the capability of abuse and not the probability of it, which is regarded in judging of the reasons which lie at the foundation, and guide in the interpretation, of constitutional restrictions': *Emery's Case*, 107 Mass. 172. 'There is no more sacred duty of a court than, in a case properly before it, to maintain unimpaired those securities for the personal rights of the individual which have received for ages the sanction of the jurist and the statesman; and in such cases no narrow or illiberal construction should be given to the words of the fundamental law in which they are embodied': Mr. Justice MILLER in Ex parte Lange, 85 U. S. 163."

It may be unfortunate that this case must be retried, but it would be far more unfortunate to approve the denial to a defendant in our criminal courts of one of his constitutional rights.

Judgments reversed with a venire.