Commonwealth *v.* Katz, Appellant.

Argued October 23, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, RHODES and HIRT, JJ.

*Carlon M. O'Malley,* for appellant.

*John W. Murphy,* Assistant District Attorney, with him *Michael J. Eagen,* District Attorney, for appellee.

Opinion by Rhodes, J., December 13, 1939:

Appellant was indicted under the Act of April 24, 1931, P. L. 52, §1, 18 PS §814. This act provides that: "Any person ...... who shall induce, persuade, encourage, inveigle, or entice a female person to become a prostitute ...... shall be guilty of pandering—a felony ......"

Appellant was tried and found guilty on an indictment charging him with the crime in the words of the act. His motion for a new trial was refused, and sentence imposed. This appeal followed.

The case was called for trial on October 5, 1938, before Little, P. J., 34th Judicial District, specially presiding. On October 8th a verdict of guilty was returned by the jury. On October 11th appellant filed his motion and reasons requesting a new trial. On October 3, 1938, at the commencement of the October Term in Lackawanna County, Leach, P. J., of the Lackawanna county courts, gave some general instructions to the entire panel of jurors. Such instructions were stenographically reported. Appellant and his counsel were not present at the time. On December 29, 1938, appellant's counsel presented a petition to the court below requesting that the general charge or instructions be filed of record as a part of the proceedings in this case, which request was granted. A certified copy of the charge or instructions was filed on December 29, 1938, and appellant allowed an exception thereto.

Appellant has filed fifteen assignments of error. The statement of questions involved presents five legal prop-

ositions. These we shall consider in the order in which they have been presented and argued on behalf of appellant.

■ Was the evidence sufficient to sustain the conviction? This question is raised by the first and second assignments of error. Commonwealth's case was based primarily on the testimony of Ethel Howe Norton. Mrs. Norton was eighteen years of age, married, and had one child. She had been living with her family in Clarks Summit, Pa. She testified that she met appellant in December, 1937, and worked for him for two days as a waitress in a tavern at the corner of Linden Street and Raymond Court in the city of Scranton. She again left her home in April, 1938, to work at Lake Sheridan. She remained there until July, when she returned to Scranton. She told of again meeting appellant at the Cotton Club, a night club located in the Hotel Eastman, at the corner of Penn Avenue and Spruce Street, in Scranton. At this meeting she asked appellant if he knew where she could obtain a job, and he told her that he did. He called a Mrs. Parker, who had a delicatessen store nearby, and obtained a position as a waitress for her. She worked two days, and left because, as she said, the hours were too long. She told appellant that the work was too hard, and that she was going to quit. He told her that it was all right with him. A few days later Mrs. Norton asked appellant to loan her some money to pay her room rent at the Capitol Hotel, where she was staying. In response, Mrs. Norton testified that appellant told her that he knew a way she could pick up a few dollars for herself, and she asked him how. Appellant then told her that she could drink with men in the Cotton Club and pick up a few tips. "He told me he would pick out the men for me to go to his room with and that I could charge them $2 each. ......
He said I was to have intercourse with the men there."
Defendant took Mrs. Norton to his room in the Hotel Eastman, which she was told to use. On the nights of

July 17 and 18, 1938, appellant pointed out four or five men to Mrs. Norton, with all of whom she had intercourse in appellant's room, and charged each of them $2. These men were strangers to her; she never saw them before the occurrence or since. Some of the men appellant brought over to Mrs. Norton in the Cotton Club, and told her to go upstairs to his room with them. Others he pointed out to her, and told her that she should take them upstairs. This witness also testified that she had never had intercourse with any other man than her husband before appellant sent her up to his room with men.

Appellant denied that he had conducted himself in the manner described by this witness, and denied the charges of the Commonwealth. Appellant admitted having met Mrs. Norton on some occasions, and denied meeting her on others, as testified to by her. He admitted that he had a room in the Hotel Eastman at least six times during the month of July. Appellant contradicted the testimony of Charles E. Franklin, a Commonwealth witness, who testified to an attempt to have the charge of pandering against him settled after proceedings were instituted.

The defense called a number of witnesses for the purpose of contradicting Mrs. Norton as to incidents both before and after July 17 and 18, 1938. But the evidence presented by the defense was far from being such as to require belief by the jury, and it would serve no purpose to point out in this opinion the many inconsistencies and contradictions which largely discounted its effectiveness, to say nothing of other inherent weaknesses which could be mentioned. There was much conflicting testimony as there is in every such case. The testimony of Mrs. Norton and appellant was irreconcilably conflicting; one was not telling the truth. But it was the prerogative of the jury to pass upon their credibility and determine which was worthy of belief. In some instances both were contradicted by

other witnesses. If the jury believed the testimony of Mrs. Norton, it was sufficient to establish appellant's guilt. Whether the testimony presented by appellant and his witnesses was to be believed was a matter solely within the province of the jury; whether such testimony was sufficient to create a reasonable doubt of appellant's guilt was likewise for the jury to decide. *Com. v. Gabriel,* 130 Pa. Superior Ct. 191, 196, 196 A. 866. The trial judge properly left to the jury to determine from the evidence whether appellant encouraged Mrs. Norton to become a prostitute, and also whether she was previously a prostitute. As to the latter the charge of the court contained the following: "Now, if you find from the testimony in this case that Ethel Howe Norton was a prostitute before she met this defendant, your verdict should be one of acquittal, because if she were already a prostitute before she met this defendant then it would not be possible for this defendant, naturally, to have made her become, or encouraged her, enticed, inveigled or persuaded her, to become a prostitute." The evidence was clearly sufficient to require its submission to the jury for the determination of appellant's guilt or innocence.

■ Appellant claims that his constitutional rights were violated by reason of a general charge to the entire panel of jurors given at the beginning of a term of criminal court in Lackawanna County, on October 3, 1938, in the absence of appellant and his counsel, and that such charge contained legal error (third, fourth, fifth, and sixth assignments of error). Judge LEACH, in accordance with the practice in that county, delivered to the entire panel of jurors, upon their first day of service in that court, what may be termed a general charge. The instructions included a statement of some of the general rules or principles of law, including the doctrine of reasonable doubt. They were what every individual should know, and what every juror was obliged to know in order to perform his duties honestly

and impartially. Some practical and common-sense advice was also given to the jurors who were about to enter upon their duties, and nothing was said, in our judgment, which precluded them from heeding and following the instructions by the trial judge in appellant's case subsequently tried. "No man, not even an accused, should be heard to complain that the district judge fairly and impartially, and without any injury to him, attempts to aid a jury panel to properly, fairly, intelligently and impartially discharge their duties and functions as jurors": *Reed v. State,* 74 Tex. Cr. R. 242, 168 S. W. 541, at page 545.

These instructions were taken down stenographically as they were given. No reference or objection was made thereto during appellant's trial. It was not until December 29, 1938, that appellant's counsel presented a petition requesting that the general charge be filed of record as a part of the proceedings in appellant's case. A certified copy was thereupon filed, and appellant allowed an exception thereto. It is immaterial that this practice must have been known to counsel that appellant's trial, which was listed for that particular day, was, just prior to the general charge, continued by request of appellant's counsel, and that the latter's subsequent absence was at his own request and for his own convenience. Disregarding these facts, we do not think that appellant was deprived of a fair and impartial trial, or that any of his constitutional rights were violated. The instant case is readily distinguishable from *Com. v. House,* 6 Pa. Superior Ct. 92; *Com. v. Gabel and Gabel,* 79 Pa. Superior Ct. 59; *Com. v. Cohen,* 133 Pa. Superior Ct. 437, 2 A. 2d 560; and *Com. v. Cunningham et al.,* 137 Pa. Superior Ct. 488, 9 A. 2d 161.

The fact that the general charge was reported stenographically is important. An opportunity was thereby afforded appellant to scrutinize and except to what was said. Counsel for appellant has been able to refer to nothing in the charge which would lead us to believe

that it influenced the jury against the appellant, or that such instructions had resulted in any harm to him. However, we take this occasion to reaffirm what we said in *Com. v. Cohen,* supra, to the effect that the practice of delivering a general charge to the entire panel of jurors is dangerous, and is to be discouraged; but we do not say that such practice constitutes substantial error requiring reversal of a conviction subsequently obtained against a defendant in every instance where the defendant and counsel were absent when such charge was delivered. Every defendant is entitled to a fair and impartial trial by jury, as guaranteed by our Constitution, and nothing shall be done, by a general charge or otherwise, to abridge that right. When the general charge was given to the panel of jurors appellant's trial was not actually in progress, and if the instructions were correct and had no unfavorable or harmful application to his case when it subsequently came to trial no reversal would be required. See *Reed v. State,* supra; *Com. v. Kelly,* 292 Pa. 418, 141 A. 246. Our examination thereof convinces us that it contained no suggestions or statements likely to influence the jurors' decisions in cases in which they might subsequently sit, and in no way conflicted with the charge given in appellant's case. It might be a violation of appellant's rights if the general charge in whole or in part was incorrect or improper, or if appellant could not ascertain what was said in the general charge in order to determine whether it was correct or incorrect, harmful or prejudicial. But appellant has full knowledge of what was said to the entire panel of jurors by Judge LEACH before the jury which tried appellant was empaneled and sworn. Appellant was allowed an exception to the instructions after they were made a part of the record in this case. They have been the subject of assignments of error on this appeal. In such circumstances we do not think that there was an impairment or abridgment of appellant's rights secured to him by

section 6 of article 1 of our Constitution, PS Const. art. 1, §6, p. 108, and section 9 thereof, PS Const. art. 1, §9, p. 124. An accused's right to be present pertains to the trial[1] itself, and may be said to extend to every part and stage of the trial proper. But it seems according to reason that this right does not extend to matters which cannot be related to or connected with the subsequent trial of accused, and if therefrom no harm or prejudice can be said to result to him whereby he may be deprived of a fair trial by an impartial jury. The general charge now before us was not made applicable to appellant's trial by anything said therein, or by any reference thereto at any stage of his trial; it was not incompatible with the specific instructions given appellant's jury as to their duties and as to the facts and the law of the case; and we can discover nothing therein that might have influenced the verdict against him, and which would justify a reversal of his conviction.

In *Com. v. House,* supra, the jury had retired to deliberate upon their verdict. They had been out for twenty-four hours, and the court had adjourned for the day. The jury were brought into court in the absence of defendant and his counsel, and the trial judge gave them additional instructions as to the law of the case, without notice to either defendant or his counsel. This action, we held, was a denial of defendant's right or privilege to be present, secured to him by the Constitution.

In *Com. v. Gabel and Gabel,* supra, defendants failed to appear when they were called for trial, and the court ordered the plea of not guilty to be entered in their behalf. A jury was then empaneled and sworn and the testimony of the Commonwealth presented, in the absence of defendants. On appeal it was held that defendants' right to be present at their trial was violated, and a new trial was granted.

---

[1] See *Com. v. Fugmann,* 330 Pa. 4, 29, 198 A. 99.

In *Com. v. Cohen,* supra, a general statement had been made by the court to the entire panel of jurors concerning their duties and obligations as jurors, and the general principles of law which apply to criminal cases. This statement or charge was given by the court at the beginning of the criminal term, and was not stenographically reported. When defendant was subsequently tried for larceny the trial court directed the jurors then in the box to recall and apply in the case then on trial the principles explained in the prior general charge, which was given to all the jurors at the beginning of that week. We reversed the conviction, and granted a new trial for the reason that (p. 444): "Injecting into his otherwise fair and adequate charge of a direction to the jurors to recall 'the general charge of the court which was given to all jurors at the beginning of the week' and to apply, in disposing of appellant's case, 'the general principles told [them]' at that time amounted to an inadvertent denial of appellant's right to be present when the jurors trying him were 'being instructed as to their duties.' "

In *Com. v. Cunningham et al.,* supra, on the first day of their term of service as jurors an address was delivered, in the absence of defendant and his counsel, to the entire panel, not by the presiding judge, but by a deputy attorney general of the Commonwealth, who had charge of the prosecution of defendant awaiting trial before a jury about to be selected out of the panel. The remarks of the deputy attorney general were not stenographically reported, but the substance of his address was stated by him, to the best of his recollection, at the hearing in the court below upon the motion for a new trial. In his stipulation the deputy attorney general said: "I think I said some thing generally on their duties on the doctrine of reasonable doubt." In reversing the conviction and granting a new trial we said, in an opinion by Judge CUNNINGHAM: "How can it be said appellant has been accorded his constitutional

right 'to be heard by himself and his counsel' when no opportunity was afforded to take exceptions to, and secure a review of, anything the Deputy Attorney General may have said with relation to the doctrine of reasonable doubt and its application, and when it is not known exactly what he did say. He had no right to instruct jurors upon principles of law even in the presence of the appellant and his counsel; that was the function and duty of the trial judge."

In the instant case appellant was not on trial as in the House case, nor was he tried in his absence as in the Gabel case, nor was an unreported general charge by reference incorporated in the specific charge to the jury as in the Cohen case, nor was he deprived of an opportunity to take exception to, and secure a review of, what was said to the panel of jurors as in the Cunningham case where, in addition, the instructions were by one who had no right to give them.

Appellant, however, contends that in two portions of the general charge substantial error is found. The first is as follows: "A reasonable doubt is one fairly arising from the evidence, which would cause you to pause and hesitate in the ordinary affairs of life. It is not every shadow of a doubt or every possibility of a doubt. In other words, you do not believe a man is guilty in your common-sense judgment and according to the evidence, and then have a reasonable doubt of his guilt." Appellant argues that this portion of the charge instructed the jury that unless they had a reasonable doubt they must find a man guilty. We do not think that the court meant that or conveyed that idea, but rather that if, using common-sense judgment, they believed a man guilty, then they have no reasonable doubt of his guilt. See *Com. v. Bruno et al. (No. 1)*, 324 Pa. 236, 245, 246, 188 A. 320. The language used, when taken with the balance of the charge relating to reasonable doubt, was not objectionable. Reasonable doubt was not only defined, but so illustrated as to draw no complaint from

counsel for appellant as to the applicability of such illustration. The use of the word "ordinary" followed *Com. v. Bryson,* 276 Pa. 566, 120 A. 552, and *Com. v. Barrish,* 297 Pa. 160, 146 A. 553. At that time *Com. v. Kluska,* 333 Pa. 65, 3 A. 2d 398, had not appeared, as the opinion was not handed down until January 9, 1939.

The second portion of the charge, to which exception is taken, reads: "Sometimes a professional criminal is before you on a very minor charge. He may have had probation several times; there may be a lot of things that would warrant the judge in giving a rather severe sentence. On the other hand it may be a defendant's first offense and, after considering the matter, although it might be a penitentiary offense, the judge often sus- pends sentence." As to this, it is claimed that it favors convictions in preference to acquittals. We find no war- rant for such a construction. Following that portion of the charge quoted, Judge LEACH said: "That is a matter for the judge, and it is his responsibility and not the responsibility of the jury. On the other hand, as to all questions of fact, whether you believe that a thing happened or whether it didn't, it is not the judge's belief but your belief, and you have the power to tell what actually happened by your verdict."

The jurors were merely told that all questions of fact were to be determined by them, and that the imposition of sentence after conviction was the responsibility of the court and not of the jury. This is the law.

It is our conclusion that the general charge to the panel of jurors in no way harmed appellant, and con- stituted no invasion of his constitutional rights. See *Com. v. Kelly,* supra, pp. 421, 422.

█ The seventh, eighth, ninth, tenth, and eleventh assignments of error complain of questions asked ap- pellant and his witnesses, on cross-examination, by the assistant district attorney. Appellant argues that the questions asked and covered by these assignments con- stituted improper conduct and unfairness on the part

of the assistant district attorney in cross-examining appellant, and witnesses for appellant, and that appellant was thereby deprived of a fair trial. After carefully examining the record we can find no merit in any of these assignments.

The seventh assignment of error complains of the following question asked of Police Captain Walter Gogolkiewicz, a witness for appellant: "Q. Haven't you had business dealings since you have become Captain of Police with Mendel Katz?" An objection was made by counsel for appellant, and the same sustained by the trial judge. The tenth assignment of error complains of a similar question asked of Detective Leo Callahan, another witness for appellant. The witness was asked: "Q. Are you on the payroll of Mendel Katz?" An objection was interposed to this question, and the same sustained by the trial judge. It would have been better if these questions had not been asked by the assistant district attorney. But they are insufficient to constitute reversible error, and they would not justify a reversal of a conviction which, in our judgment, is warranted by the evidence. No answer to either question was received which tended to injure the case of appellant. *Com. v. Duffy*, 49 Pa. Superior Ct. 344, 355.

The eighth assignment of error complains of a question asked Agnes McLaughlin, a witness for appellant. The question was: "Q. Is your husband acting as a front for anybody down there now?" An objection was made and overruled, and the witness answered, "Absolutely not." Even if this question was improper, the answer could not possibly have injured appellant. *Com. v. Kay*, 14 Pa. Superior Ct. 376, 386.

The ninth assignment of error complains that the assistant district attorney asked appellant's witness, Frank Chicillo, on cross-examination, whether he had worked as a bartender for Katz. The witness testified that he "never worked for any Katz." What we have

64

said relative to the previous assignment applies to this one.

The eleventh assignment of error relates to questions asked appellant on cross-examination. After making an offer the assistant district attorney was allowed, over objection, to ask appellant: "Q. Did you advertise in the Scranton Republican of this City, while you were conducting the Wonderbar, an ad reading 'Max Katz and his Kittens, the hottest spot in town'?" Appellant answered: "I cannot recall." Appellant gave the impression in his testimony that he was in the butcher business, except during the prohibition era. We think, in view of the testimony offered by appellant as to his activities, that the question was properly allowed by the trial judge. The purpose of the question was to test his credibility, and for such a purpose it was competent. The method and extent of cross-examination, especially where the object is to test the credibility of a witness, must be left largely to the discretion of the trial judge, and unless this discretion is plainly abused to the injury of the party complaining this court will not reverse. See *Com. v. Kay,* supra, p. 385. Appellant's answer was sufficient to show that the question was not unjustifiable.

It must appear from the question and answer, or from the question alone, that wholly foreign and irrelevant matter manifestly tending to mislead the jury to appellant's prejudice was got before them under the guise of cross-examination. *Com. v. Williams,* 41 Pa. Superior Ct. 326. It is upon the Williams case that appellant relies to support his proposition based upon these assignments of error. In the Williams case, however, the prejudicial error consisted in the Commonwealth's being permitted, by cross-examination, to bring before the jury, in an indirect way, the animadversions on the defendant's character and conduct, made by another judge in his charge to the jury in another case. This is not the situation here.

It is proper for the Commonwealth to show by cross-examination matters bearing on the witness' bias or feeling as affecting his credibility. "Whatever tends to show the interest or feeling of a witness in a cause is competent by way of cross-examination": *Com. v. Farrell,* 187 Pa. 408, at page 423, 41 A. 382, at page 384. "The latitude allowed in cross-examination is largely in the discretion of the trial court: *Com. v. Delfino,* 259 Pa. 272, 102 A. 949; *Com. v. Keegan,* 70 Pa. Superior Ct. 436, 441": *Com. v. Carroll,* 131 Pa. Superior Ct. 357, at page 366, 200 A. 139, at page 143. We are convinced that in the instant case this discretion was in no way abused.

■ The fourth question is raised by the twelfth assignment of error. This refers to a portion of the charge of the court. No specific exception was taken to that portion of the charge to which objection is now made. Counsel for appellant, in his brief, complains that the trial judge stated that: "The Commonwealth is not looking for victims"; and that he then informed the jury that the representative of the Commonwealth is a quasi-judicial officer, and that he is not seeking a victim. We find no objection to these statements, and we think what the trial judge said is entirely true, and it certainly constitutes no reversible error.

■ Finally, appellant complains that his motion for a continuance should have been allowed on the grounds of surprise and unpreparedness, after the court had permitted the Commonwealth, in the middle of the trial, to amend the dates in the indictment. This is covered by the thirteenth assignment of error. The indictment set forth that the alleged crime was committed on July 1, 1938. During the course of the trial it developed that the dates of the commission of the offense were July 17 and 18, 1938. The court allowed an amendment to the indictment to conform with these dates.

It was not necessary for the Commonwealth to prove the exact time alleged in the indictment in this case,

66

as time did not enter into the nature of the offense. Appellant has not shown that he was embarrassed in the preparation or presentation of his defense by the amendment. The offense with which appellant was charged was proved to have been committed within the statutory period. The date in the indictment was likewise within the statutory period. See *Com. v. Streets,* 113 Pa. Superior Ct. 65, 172 A. 31, and cases cited therein; see, also, *Com. v. Wiswesser,* 124 Pa. Superior Ct. 251, 188 A. 604; *Myers and Murray v. Commonwealth,* 79 Pa. 308.

The fourteenth assignment of error relates to the refusal of appellant's motion for a new trial, and the fifteenth assignment of error to the entering of judgment and sentence.

All the assignments of error are overruled.

Judgment is affirmed, and the record is remitted to the court below, and it is ordered that the defendant appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with the sentence, or any part thereof which had not been performed at the time the appeal in this case was made a supersedeas.