## UNITED STATES ex rel. MARELIA v. BURKE.

### Misc. Docket No. M-1457.

United States District Court
E. D. Pennsylvania.
Dec. 14, 1951.

Michael von Moschzisker, Philadelphia, Pa., for relator.

John H. Maurer, Dist. Atty., James W. Tracey, Jr., First Asst. Dist. Atty., Philadelphia, Pa., for respondent.

CLARY, District Judge.

The relator, Joseph Marelia, was tried and found guilty in the Quarter Sessions Court of Philadelphia County, Commonwealth of Pennsylvania, on March 22, 1946, on bill of indictment No. 568 charging attempted burglary and on bill of indictment No. 569 charging possession of burglary tools. He was sentenced immediately after trial and the bill of indictment indicates that the original sentence was 5 to 10 years on bill No. 568, later reduced to 3½ to 7 years; no sentence being imposed on bill No. 569. No appeal was taken from this sentence but a writ of habeas corpus was filed in the Supreme Court of Pennsylvania during the year 1950, which court granted a rule to show cause and appointed counsel for the relator. Answers were filed to the petition by the District Attorney and the Warden. Relator's counsel filed a supplemental petition to which the District Attorney made answer and the case was argued before the Supreme Court of Pennsylvania, briefs being filed for the relator by his court appointed counsel and by the District Attorney. In an opinion by Mr. Justice Bell of that court, dated September 25, 1950, 366 Pa. 124, 75 A.2d 593, the petition for the writ was dismissed. A petition for rehearing was denied on December 19, 1949, and on January 22, 1951, petitioner filed in the Supreme Court of the United States a petition for a writ of certiorari. By memorandum order of the Supreme Court of the United States, 341 U.S. 911, 71 S.Ct. 616, 95 L.Ed. 1348, dated April 16, 1951, the petition for certiorari was denied. Mr. Justice Black

and Mr. Justice Douglas were of the opinion that certiorari should have been granted.

Thereafter, relator filed a petition in this court for a writ of habeas corpus assigning in support thereof the same reasons and raising the identical questions which were presented to the Supreme Court of Pennsylvania. Having exhausted all State remedies, and a petition for writ of certiorari having been denied by the United States Supreme Court, relator is properly before this court. Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761.

Relator complains that he is unjustly restrained of his liberty and has been denied due process by the Courts of Pennsylvania in several particulars which may be subdivided first into complaints of actions by the police officials before trial and second of matters which occurred at his arraignment and trial.

As to the first subdivision, relator complains that after his arrest on March 13, 1946, he was held virtually incommunicado by police officials for a period of approximately 112 hours, preventing him from obtaining counsel, that as to one of the charges against him he was never afforded a preliminary hearing and, finally, that he was questioned by relays of detectives and police officers during that period and physically abused in an effort to have him confess to numerous crimes which he alleges he did not commit.

■■ The record of the hearing before me does not support these allegations and demonstrates no violation of constitutional rights. The one person with whom relator might reasonably have communicated, his landlady, was notified by police of his arrest almost immediately after it happened. He did not know the address of his wife, whom he now claims might have secured counsel for him. Furthermore, the record before this court indicates that relator was permitted to and did write a letter to his landlady the day after he was committed to prison. That he was afforded a preliminary hearing on the second charge is conclusively proved by the transcript of the testimony taken at that hearing and introduced into evidence at the hearing before me. I find as a fact, further, that he was not physically abused and coerced in any manner by the police. Nothing in this record indicates that his allegation of being held incommunicado (which I doubt) or being physically abused (which I have found did not happen) resulted in obtaining any confession by coercion or otherwise violated any of his constitutional rights. Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L. Ed. 1690.

The second category of complaints centers around the actual trial of his case before the Honorable Harry S. McDevitt on March 22, 1946. He claims that he was not represented by counsel of his own choosing, that the court appointed counsel against his wishes, and that he was forced to trial despite requests by him and his court appointed counsel for continuance in order to prepare his defense. Additionally, he claims that the court appointed attorney, who was the Voluntary Defender of Philadelphia County, did not properly represent him and even refused to talk to him during the course of the trial.

■■ The official transcript of the case introduced in evidence at the hearings fails to support any of these allegations. The representative of the Voluntary Defender's Office, Joseph I. Levy, Esquire, testified at the hearing before me that he did not recall asking for a continuance and that notes made by him at the time of trial did not reflect such a request. That Mr. Levy refused to talk with the relator before and during the time of trial, I do not believe. Mr. Levy's cross-examination showed an obvious knowledge of details surrounding the case which he could not have known without consultation with the prisoner. Relator was represented at trial by competent counsel and none of his constitutional rights and safeguards were violated in that regard.

Relator further alleges that his constitutional rights were violated in that the court instructed the jury to return a verdict of guilty and effectively denied him the right of trial by jury. This charge is based

upon the official transcript of the notes of testimony filed in the case. The words "must convict" definitely appear in that transcript. The entire paragraph of the portion of the charge referred to reads as follows: "You should consider these bills individually. You must find him guilty of having burglary tools in his possession and still find him out guilty of attempted burglary. Consider them individually as well as collectively."

Counsel for the relator at the hearing before me conceded that the word "out" in "find him out guilty" in the above quoted portion is undoubtedly a typographical error and that it should read "not". That is not the only apparent reportorial error in the official transcript. Counsel, however, insists that the portion "You must find him guilty of having burglary tools in his possession * * *" is not a reportorial error and that even if it was said as a slip of the tongue, it was a prejudicial invasion of defendant's constitutional right to a trial by jury.

■ I cannot believe that statement was made even as a slip of the tongue. I regard it rather as a slip of the pen. If the word "may" is substituted for "must", the paragraph then is a proper statement of law. The use of the word "must" destroys intelligible meaning. It is inconceivable that any lawyer, however inexperienced, would permit such a gross and glaring error of law to go unchallenged. Mr. Levy stated that had such a statement been made he would have immediately registered objection to it. No such objection was made. Furthermore, Mr. Levy, as a representative of the Voluntary Defender's Office of Philadelphia County, is certainly not to be considered inexperienced in the trial of criminal cases. His testimony clearly indicates and it is a well known fact that as a representative of that office he handled a great volume of cases in the course of a year in the Criminal Courts of Philadelphia County. It is entirely beyond the bounds of probability and belief that a lawyer of his trial experience and competence would let such a statement, even as a slip of the tongue, pass unchallenged. I, therefore,

deem without merit relator's charge of violation of constitutional rights in this regard.

A further ground for the writ and one which will require more extended discussion is relator's contention that his constitutional rights were violated in that he was not present at every stage of his trial. This argument is based on the fact that the Trial Judge charged the jury on the question of reasonable doubt by incorporating in his charge by reference a definition of reasonable doubt given to the same jury in another trial at a time when neither defendant nor his counsel were present in court. His contention is that he was thereby deprived of an opportunity to determine whether the charge was either correct or adequate.

■ We are not here dealing with a situation where the defendant's absence from the court was an "enforced" one. Had his absence been at the direction of the trial court or over defendant's objection, the trial court might well have lost jurisdiction of the case at that point. The primary basis of such a loss of jurisdiction would be because of the violation of fundamental concepts of justice and fairness which the cases uniformly hold are requisites of due process of law. We have here rather a situation wherein defendant and counsel were both present in court during the entire charge given by the Trial Judge. It is true that the charge as given referred to a definition given to the jury when the defendant was not present, but the fact remains that the incorporation by reference was done in his presence. The narrow question is whether that procedure violates due process. I do not regard what the Trial Judge did as any more serious than if he had failed entirely to charge on reasonable doubt or had given an incorrect charge on the question of reasonable doubt. Both of the latter are subject to exception and correction at the time and are subjects of assignment of error and appeal to the appellate court.

■ It would appear under Pennsylvania law that charging a jury by reference constitutes reversible error. Commonwealth v. House, 6 Pa.Super. 92; Com-

monwealth v. Gabel & Gabel, 79 Pa.Super. 59; Commonwealth v. Cohen, 133 Pa. Super. 437, 2 A.2d 560; Commonwealth ·v. ·Cunningham, 137 Pa.Super. 488, 9 A.2d 161; Commonwealth v. Katz, 138 Pa.Super. 50, 10 A.2d 49.

In the Cohen case, this practice was characterized by the Pennsylvania Superior Court as a violation of the rights guaranteed defendants under Article I, Section 9 of the Constitution of Pennsylvania, P.S. That case, however, was before the court on an appeal from the judgment of the lower court and on proper assignments of error. The same question now before me was specifically raised by relator before the Supreme Court of Pennsylvania in his petition there for a writ of habeas corpus. By its refusal to grant the writ and by its language strongly deprecating the use of habeas corpus proceedings as a substitute for assignments of error, the Supreme Court of Pennsylvania in effect held as to that point that it was a trial error which could be raised only directly by appeal and assignment of error and not by habeas corpus proceedings.

The Supreme Court of Pennsylvania is the judge of the law of Pennsylvania. Accepting its interpretation of Pennsylvania law as a correct exposition of the law of the State, our only inquiry can be: Did the State law, as applied, afford the relator due process of law as guaranteed him by the 14th Amendment to the Constitution of the United States. Howard v. Commonwealth of Kentucky, 200 U.S. 164, 26 S.Ct. 189, 50 L.Ed. 421.

Due process of law requires essential fairness and justice in judicial proceedings. In determining whether essential fairness and justice is present we must give consideration to the entire judicial process including reviews on appeal. The question involved may be simply stated: ·Is the requirement of Pennsylvania law that a defendant take advantage of an error, such as may have been committed here, by appeal and assignment of error rather than by habeas corpus so violative of fundamental concepts of fairness and justice as to constitute a denial of due

process? Professor Willoughby in his treatise on the Constitution of the United States, 2d edition, volume 3, chapter XCII, sections 1121 to 1143 inclusive, treats the subject at length. He points out that the States are free to set up and determine their own particular methods of procedure. He also points out that those methods of procedure are not required to be ideal, so long as they conform to the essential requirements of fairness and justice including full opportunity to be heard, an impartial tribunal, absence of fraud, bias or prejudice, and freedom from outside duress. Mr. Justice Pitney in the case of Frank v. Mangum, 237 U.S. 309, at page 326, 35 S.Ct. 582, at page 586, 59 L.Ed. 969, stated the requirements of due process of law under the 14th Amendment in the following language: "As to the 'due process of law' that is required by the 14th Amendment, it is perfectly well settled that a criminal prosecution in the courts of a state, based upon a law not in itself repugnant to the Federal Constitution, and conducted according to the settled course of judicial proceedings as established by the law of the state, so long as it includes notice and a hearing, or an opportunity to be heard, before a court of competent jurisdiction, according to established modes of procedure, is 'due process' in the constitutional sense."·

Applying the principles above discussed, there appears to me no lack of fairness or justice in the requirement of Pennsylvania law that such error (defining reasonable doubt by reference) must be assigned as error on appeal. In the instant case, both defendant and his counsel were present when the Trial Judge instructed the jury to consider a·definition of reasonable doubt previously given. Defendant had an opportunity to take exception to that definition by reference and could have asked that the definition be repeated in his presence. Refusal to comply with defendant's request could have been assigned as trial error. Had it been so assigned, it is possible under the decisions of the House, Gabel, Cohen and Cunningham cases, supra, that he might have obtained a reversal of the conviction. It may, however, have

been necessary for him to prove actual harm. See the opinion of Mr. Justice Moschzisker in the cases of Commonwealth v. Kelly, 292 Pa. 418, 141 A. 246 and Commonwealth v. Grove, 292 Pa. 418, 141 A. 246.

The procedure afforded by the law of Pennsylvania gives to defendants a right of appellate review of actions prejudicial to their interests. That procedure assures them full opportunity to be heard before courts of competent jurisdiction and according to established modes of procedure. That procedure meets the test set forth by Mr. Justice Pitney in Frank v. Mangum, supra. While the Federal Courts should have no hesitancy in granting relief in cases where defendants have been overreached or have been convicted in trials devoid of the essential elements of fairness, nevertheless, they should hesitate to interfere with fair and reasonable procedural requirements under State law.

The procedural requirements of the law of Pennsylvania as established are fair, afforded relator full opportunity to be heard and the requirement of due process has therefore been satisfied. Further, it appears that the presence of a defendant at every stage of the proceedings against him is not an absolute requirement under the 14th Amendment under all circumstances, e. g. Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674, Frank v. Mangum, supra, and Howard v. Commonwealth of Kentucky, supra. Under the facts of the instant case relator's claim of "absence" is not well grounded.

The final complaint of the relator is that the sentence of the court was increased in his absence. At the end of the trial the court stated to the relator "Go up and work in the penitentiary for the next 5 years". Relator argues that his sentence was therefore a maximum of 5 years and could not have been in excess of 2½ to 5 years under appropriate Pennsylvania Statutes. The Commonwealth, on the other hand, argues that the sentence was one of 5 to 10 years. The latter is apparently the way it was first recorded on the back of the bill of indictment. However that may be, the question was squarely presented to the Supreme Court of Pennsylvania. Without stating its basis therefor the Supreme Court in its opinion regarded this as a sentence of 5 to 10 years. In the course of his opinion, Mr. Justice Bell stated [366 Pa. 124, 75 A.2d 593] "Probably because of this record the trial judge imposed a sentence of 5 to 10 years on indictment No. 568, subsequently reduced to 3½ to 7 years". What was meant by the Trial Judge in pronouncing sentence is clearly a question of State law and since the Supreme Court of Pennsylvania has regarded it as a sentence of 5 to 10 years, the subsequent action of the court in changing it to a 3½ to 7 years sentence is therefore a reduction of relator's sentence which certainly violated none of his constitutional rights.

The petition will be dismissed.